Argued and submitted February, affirmed May 11, 1983

In the Matter of the Compensation
of Robert Luhrs, Claimant.

## STATE ACCIDENT INSURANCE FUND CORPORATION,
*Petitioner,*

*v.*

## LUHRS,
*Respondent.*

(80-04643; CA A25587)
663 P2d 418

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for petitioner. With him on the brief was Donna M. Parton, Associate Appellate Counsel, State Accident Insurance Fund Corporation, Salem.

James O'Rourke, Portland, argued the cause for respondent. On the brief was Thomas J. Barnett, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

SAIF appeals from an order of the Workers' Compensation Board affirming the referee's opinion and order determining that claimant's carpal tunnel syndrome is a compensable occupational disease for which SAIF's insured, Northwest Scientific, Inc., is responsible. Although we believe the Board applied an erroneous rule of law in reaching its result, we affirm.

Claimant has been a welder since 1968; between 1968 and 1976, he welded on either a full or part-time basis. Between 1976 and 1980, claimant was employed continuously as a full-time welder. In the fall of 1976, he began working for Northwest Scientific, at which time he was asymptomatic. In February, 1977, he complained of numbness and tingling in his right hand and pain in his left forearm. On February 14, he consulted Dr. Gray, who attributed the pain and numbness to nerve compression in the neck and diagnosed claimant's condition as a "bursitis-type problem."

In March, 1977, claimant left Northwest Scientific and went to work for Stainless Steel Specialties for about a year. He continued to experience the symptoms about which he had complained in 1977. He returned to Northwest Scientific, where he worked until April or May, 1979, and then worked successively at B & G Quality Welding, Inc., Columbia Body and Empire Machining Co., where he was working at the time of the hearing.

On February 11, 1980, claimant saw Dr. Long, complaining of pain, numbness and tingling in his right hand; that doctor diagnosed carpal tunnel syndrome, which was confirmed by nerve conduction tests. On March 11, claimant, while continuing to work at Empire, filed a claim against Northwest Scientific, which was denied. Between February and August, 1980, the pain in claimant's right hand spread to his shoulder, and he underwent surgery in August. Shortly thereafter, Dr. Long diagnosed carpal tunnel syndrome in claimant's left wrist, and performed surgery for that condition in October.

■    SAIF relies on two propositions for reversal: (1) that claimant's condition is not an occupational disease as defined in ORS 656.802(1)(a), because he has not shown that on-the-

job conditions were the major contributing cause of his disability, *James v. SAIF,* 290 Or 343, 624 P2d 565 (1981); *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655, *rev den* 292 Or 825 (1982); (2) that even if it is an occupational disease, SAIF is not liable under the last injurious exposure rule. *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982). The first proposition fails, because claimant was asymptomatic when he began working for Northwest Scientific and did not develop symptoms requiring medical attention until February, 1977. By that time, he had been employed by that employer for several months. SAIF points out, however, that Dr. Gray did not diagnose a carpal tunnel syndrome and that there is no evidence that his diagnosis was wrong. Although there is no direct evidence of a misdiagnosis, Dr. Long stated in a letter dated April 23, 1981, that, based on claimant's history, his symptoms in late 1976 or early 1977 indicated that claimant's employment at that time was the major significant contribution to his carpal tunnel syndrome for which he underwent surgery. That evidence is sufficient.

■ SAIF also argues that claimant's off-the-job activity in remodeling his house was the major cause of his disability. However, claimant did not begin that work until his symptoms had already developed to the point where he sought medical help. The medical reports from Dr. Gray indicate that claimant's symptoms at that time were work-related. Dr. Long's opinion, summarized above, indicates that those symptoms continued and that, even though claimant's off-the-job activities could have contributed to the disease, his employment was the major cause. We conclude that claimant's disability is the result of an occupational disease and is compensable.

The more difficult question is whether the last injurious exposure rule permits Northwest Scientific to avoid responsibility. The referee, relying in part on our opinion in *Bracke v. Baza'r,* 51 Or App 627, 626 P2d 918 (1981), held that the employer could not assert the rule as a defense. The Board agreed with that result, but for different reasons, because by the time of the Board's order the Supreme Court had issued its opinion in *Bracke.* The combination of our opinion and the Supreme Court's opinion in *Bracke* and the new rule adopted by the Board here can only lead to confusion. We will attempt to clarify the problem, recognizing that the Supreme Court is the ultimate authority as to what it meant in *Bracke.*

In *Bracke,* the claimant had contracted an occupational disease while working for Baza'r; she worked for several other employers after leaving Baza'r, where the working conditions were similar and could have caused the disease from which she suffered. She asserted her claim against Baza'r, not the last employer. The medical evidence was that she contracted the disease while working at Baza'r and that, having once contracted it, it would get no better and no worse as a result of work exposures. The subsequent exposures would cause the symptoms but would not worsen the disease. We held that the last injurious exposure rule did not preclude the claimant from successfully asserting her claim against Baza'r, because the subsequent work exposures were not injurious within the meaning of the rule. We had previously held in *Holden v. Willamette Industries,* 28 Or App 613, 560 P2d 298 (1977), that the rule works both ways; that is, if the claimant files a claim against his last employer and the record does not disclose whether claimant's disease worsened as a result of work exposure at that employer, the last employer could assert successfully the last injurious exposure rule to avoid liability. We disapproved that holding in *Bracke,* stating that if the claimant files a claim against the last employer where the working conditions could have caused the disease, that employer could not invoke the last injurious exposure rule to avoid responsibility.

The Supreme Court affirmed our decision in *Bracke,* but after discussing the rationale of the last injurious exposure rule and its assertion as a defense by Baza'r, the court stated:

> "The operation of the rule, as we said in *Inkley* [*v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175], provides certainty in a way which is 'somewhat arbitrary.' It operates generally for the benefit of the interests of claimants. It is fair to employers only if it is applied consistently so that liability is spread proportionately among employers by operation of the law of averages. We hold that employers have and may assert an interest in the consistent application of the last injurious exposure rules, either as to proof or liability, so as to assure that they are not assigned disproportionate shares of liability relative to other employers who provide working conditions which generate similar risk."

That language seems to say that any employer against whom a claim is filed may assert the last injurious exposure rule as a

defense, as in *Holden,*[1] and that our disapproval of *Holden* in *Bracke* was not correct. However, the court added a footnote:

> "There is no reason to apply the rule with any greater arbitrariness than is required to achieve its purposes, but there is no basis in this case to recognize an exception or qualification of the rule. It is arguable that an employer has no interest in the unnecessary dominance of an artificial rule when a claimant foregoes the benefit of the rule and relies upon proof of actual causation. It is questionable whether an employer can invoke the rule of proof as a defense to defeat the rights of a claimant who successfully proves actual causation. To allow that would be to allow an employer to inject the rule into a case to defeat the very interests of a claimant which the rule is intended to serve. Similar considerations may apply in cases presenting limitations problems, *see* n 1. In cases of incremental injury, such as *Inkley,* it may be that an employer may invoke the rule of liability assignment to shift liability to a later employer. Procedures exist whereby any causal employer can join a later causal employer in order to protect its proportional interest. *See, e. g.,* Oregon Administrative Rule 436-54-332. Also, an employer's interests may be protected where, as here, a claimant files against all possibly liable employers. Because we hold that disability occurred during Baza'r employment, we need not consider the application of the rules in those situations. *See also, Fossum v. SAIF, supra* at n 1." 293 Or at 249-50 n 5.

■      We share the Board's uncertainty as to where all of that language leaves us, but we do not agree with the Board that the Supreme Court's opinion in *Bracke* precludes an employer from asserting the last injurious exposure rule to defend its interest when the claim is filed against a single employer. We believe that the right to assert the rule defensively depends on whether that single employer is the last employer where working conditions were such that they could have caused the disease. If so, the rule may not be asserted as a defense. Where, however, the employer against whom the claim is filed is not the last employer where working conditions were potentially injurious, that employer may assert the rule as a defense; however, whether it will be successful depends on the medical evidence, as in *Bracke.* In this case, the Board adopted the following rule:

---

[1] The author of the opinion in the Supreme Court was the author of the *Holden* opinion in this court.

"The rule of law to be applied in claims such as this, where a claimant has filed an occupational disease claim against a single employer, is the rule of *James v. SAIF*, 290 Or 343, [624 P2d 565] (1981), and *SAIF v. Gygi*, 55 Or App 570 [639 P2d 655, *rev den* 292 Or 825] (1982): whether the claimant's work conditions, when compared to claimant's nonemployment exposure, are the major contributing cause of the claimant's condition. If the employer is able to produce evidence of a subsequent work exposure which may be a contributing cause of the worker's condition, it is appropriate to consider such evidence, together with evidence of possible nonindustrial exposure, in making the determination of whether the exposure at *this* employer's place of business was a major cause of claimant's condition." (Emphasis in original.)

Clearly, that rule is a new one and, although it makes for an easy disposition of this case, it would undermine the last injurious exposure rule. A principal purpose of the rule is to permit a claimant suffering from an occupational disease to file a claim against the last employer where working conditions could have caused the disease, without being required to establish actual causation. *Fossum v. SAIF*, 293 Or 252, 646 P2d 1337 (1982). Under the Board's rule, the claimant would be required to prove that the last employer's place of business was a *major* cause of claimant's condition. We believe that under the Supreme Court's opinion in *Bracke* an employer in the position of Northwest Scientific may rely on the last injurious exposure rule as a defense. However, if, as in *Bracke,* the claimant's evidence is that the working conditions at Northwest Scientific were the actual cause of his carpal tunnel syndrome, the defense will not succeed.

■     Here the medical evidence indicates that claimant's carpal tunnel syndrome was caused by on-the-job conditions while he was working at Northwest Scientific and that the symptoms gradually worsened until surgical intervention became necessary. The substance of Dr. Long's testimony is that, once a person develops a carpal tunnel syndrome, the syndrome remains, but the symptoms will vary depending on the person's activity. The claimant's work activity was a "definite aggravation of the symptoms," which will get progessively more painful with activity until surgery may be required to relieve them. According to Dr. Long, the disease is not cured by surgery, but "you can frequently relieve all of the symptoms."

There may, however, be a recurrence of symptoms, not because the disease worsens but because the symptoms do.

On this record, we conclude that claimant's carpal tunnel syndrome was caused by his work activity at Northwest Scientific and that the working conditions at subsequent employers caused an increase in claimant's symptoms until the pain became intolerable and surgery became necessary in 1980.

Accordingly, as in *Bracke,* claimant has established the cause of his occupational disease without relying on the last injurious exposure rule. Although the employer is not precluded from relying on that rule, the record does not support that defense here.

Affirmed.