Argued and submitted December 13, 1993, reversed and remanded for reconsideration September 7, 1994

In the Matter of the Compensation of
Joseph E. Kelly, Claimant.
SAIF CORPORATION
and Image Graphics & Litho, Inc.,
*Petitioners,*

*v.*

Joseph E. KELLY,
Riddle Press and Kemper Insurance Co.,
*Respondents.*

(91-06705, 91-05122; CA A79721)

880 P2d 970

Steve Cotton, Special Assistant Attorney General, argued the cause for petitioners. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Craig A. Staples argued the cause for respondents Riddle Press and Kemper Insurance Co. With him on the brief was Roberts, Reinisch, MacKenzie, Healey & Wilson, P.C.

No appearance for respondent Joseph E. Kelly.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

HASELTON, J.

---

* Haselton, J., *vice* Durham, J.

## HASELTON, J.

SAIF seeks review of an order of the Workers' Compensation Board that applied the last injurious exposure rule to assign SAIF responsibility for claimant's occupational disease. We reverse and remand.

Claimant, a printing press operator, sought treatment for wrist and arm pain in 1988, while employed by an insured of Kemper Insurance Company (Kemper). Claimant's physician, Dr. Gill, diagnosed carpal tunnel syndrome, which the employer accepted. In 1990, Gill performed surgery. Claimant's condition improved, but he continued to experience some pain in his left elbow and right thumb. In January 1991, claimant stopped working for Kemper's insured and began working for an employer insured by SAIF. On February 12, 1991, Gill diagnosed claimant's left elbow and right thumb/wrist[1] condition as de Quervain's tenosynovitis.

Claimant filed claims against both Kemper and SAIF. The referee found:

"5. Following the surgery, most of claimant's hand and arm symptoms resolved. However, he had continuing symptoms in his left elbow and right thumb. The left elbow symptoms improved, but did not entirely resolve, with therapy.

"6. Claimant continued to work at [Kemper's insured] through January 17, 1991. *During that time, he developed increased left elbow and right wrist/thumb pain.*" (Emphasis supplied.)

The referee concluded that work for Kemper's insured was the major contributing cause of claimant's occupational disease and that Kemper had not made a showing sufficient to shift responsibility to SAIF.

On review, the Board, although adopting the referee's findings in their totality, reversed and assigned responsibility for claimant's condition to SAIF under the last injurious exposure rule. It found:

---

[1] The referee refers to claimant's "right wrist/thumb" condition. The Board refers to claimant's "right wrist de Quervain's tenosynovitis." Those labels appear to be interchangeable.

"Claimant first sought treatment for his current left elbow and right wrist de Quervain's tenosynovitis conditions on February 12, 1991, during his employment with SAIF's insured."

SAIF petitioned for reconsideration, arguing that the Board improperly relied on the date of diagnosis, rather than the date claimant first sought treatment for symptoms, in assigning responsibility. The Board held on reconsideration:

"[W]e remain persuaded that February 12, 1991 was the date claimant first actually sought treatment for his current left elbow and right wrist de Quervain's conditions. Our finding in this regard does *not* depend on the fact that Gill diagnosed de Quervain's tenosynovitis on that date. Instead, it is based on the fact that claimant sought treatment on February 12, 1991 and Gill, on that date, first identified claimant's post-[carpal tunnel syndrome] surgery right wrist and left elbow conditions as 'separate' from and 'unrelated' to the prior problems." (Emphasis in original.)

On appeal, SAIF argues that the Board applied the wrong "trigger" for the "last injurious exposure" rule—*i.e.*, that the Board improperly focused on the date of initial diagnosis of claimant's de Quervain's condition and not the date that claimant first sought medical treatment for symptoms of that condition. Kemper does not dispute that the date claimant first sought treatment for symptoms is the correct "trigger." Kemper argues, instead, that the Board did, in fact, base its determination on the correct "trigger" and that substantial evidence supports the Board's finding that claimant first sought treatment for his left elbow and right wrist/thumb symptoms while employed by SAIF's insured.

We agree with SAIF that, in assigning responsibility under the last injurious exposure rule, the dispositive date is the date claimant first sought treatment for symptoms, even if the condition was not correctly diagnosed until later. That accords with prior decisions of our Supreme Court and of this court.[2] We also agree with SAIF that the Board seems to have

---

[2] In *Bracke v. Baza'r*, 293 Or 239, 646 P2d 1330 (1982), the Supreme Court held that the claimant was disabled at the time breathing difficulties forced her to leave work, even though the condition was not diagnosed until after the claimant began working for a different employer. 293 Or at 244. *Accord United Pacific Ins. v. Harris*, 63 Or App 256, 260, 663 P2d 1307, *rev den* 295 Or 730 (1983). In *SAIF v. Luhrs*, 63 Or App 78, 663 P2d 418 (1983), we held that a misdiagnosis of the claimant's carpal

relied on a different triggering event. If the Board properly focused on the date of treatment for *symptoms*, we do not understand how its findings support its conclusion. In particular, given the Board's adoption of the referee's findings that claimant's left elbow and right thumb symptoms "continue[d]" following surgery and "increased" while he was still working for Kemper's insured through January 17, 1991, we do not understand how it could have concluded that claimant first sought treatment in February 1991, while employed by SAIF's insured. Moreover, the Board explained on reconsideration that it relied on February 12, 1991, as the triggering date because that was the date on which Gill "first identified claimant's post-[carpal tunnel syndrome] surgery right wrist and left elbow conditions as 'separate' from and 'unrelated' to the prior problems." This statement at least implies that Gill treated claimant's symptoms *before* identifying them as a separate condition. Under the circumstances, we cannot determine whether the Board found that claimant sought medical treatment for *symptoms* of his de Quervain's tenosynovitis while employed by Kemper's insured.

We remand for the Board to apply the standard we have enunciated here or to explain its opinion in light of that standard.

Reversed and remanded for reconsideration.

---

tunnel syndrome did not allow SAIF to shift responsibility to the insurer "on the risk" when the condition was correctly diagnosed. *See also Timm v. Maley,* 125 Or App 396, 401, 865 P2d 1315 (1993), *rev den* 319 Or 81 (1994) ("the date that the claimant first began to receive treatment *related to* the compensable condition is determinative for the purpose of assigning initial responsibility for the claim" (emphasis supplied)).