Argued and submitted March 5, 1999, affirmed July 26, petition for review denied October 24, 2000 (331 Or 244)

In the Matter of the Compensation of
James E. Tapp, Claimant.

AGRICOMP INSURANCE
and CRB Manufacturing,
*Petitioners,*

*v.*

James E. TAPP,
Liberty Northwest Insurance/CRB Manufacturing
and SAIF Corporation/CRB Manufacturing,
*Respondents.*

(WCB Nos. 97-07116, 97-05315, 97-05314; CA A102426)

7 P3d 764

Richard D. Barber, Jr., argued the cause for petitioners. With him on the brief was Sheridan and Bronstein.

Alexander D. Libmann argued the cause and filed the brief for respondent Liberty Northwest Insurance/CRB Manufacturing.

David L. Runner, Appellate Counsel, argued the cause for respondent SAIF Corporation/CRB Manufacturing.

John M. Oswald waived appearance for respondent James E. Tapp.

Before Edmonds, Presiding Judge, and Deits, Chief Judge,* and Kistler, Judge.

DEITS, C. J.

---

\* Deits, C. J., *vice* Armstrong, J.

**DEITS, C. J.**

Petitioner PAULA Insurance (PAULA)[1] seeks review of an order of the Workers' Compensation Board that applied the last injurious exposure rule (LIER) to assign PAULA responsibility for claimant's left-side carpel tunnel syndrome (CTS). We affirm.

Claimant began working for CRB Manufacturing in 1968. He worked elsewhere from 1972 to 1975, but returned to CRB in 1975 and has worked there since that time. Throughout his employment with CRB, claimant has been a punch press operator. The parties acknowledge that claimant suffers from bilateral CTS, an occupational disease, caused by his work for CRB. Because the compensability of claimant's condition is acknowledged, the only issue here is responsibility. An order pursuant to ORS 656.308(1)[2] was not entered and, consequently, the LIER applies in assigning responsibility. *SAIF v. Yokum,* 132 Or App 18, 24-25, 887 P2d 380 (1994).

Three insurers covered CRB during the period in question: (1) from July 1, 1988 to June 30, 1996, Liberty Northwest Insurance Corporation was CRB's insurer; (2) from July 1, 1996 to December 31, 1996, SAIF Corporation was the insurer; and (3) from January 1, 1997, to the time of the hearing, PAULA was CRB's insurer. All of the insurers denied responsibility for claimant's condition. A hearing was held to determine responsibility and the administrative law judge (ALJ) assigned responsibility for claimant's right CTS to Liberty[3] and his left CTS to PAULA. The

___

[1] PAULA Insurance was formerly known as Agricomp Insurance.

[2] ORS 656.308(1) provides, in part:

"When a worker sustains a compensable injury, the responsible employer shall remain responsible for future compensable medical services and disability relating to the compensable condition unless the worker sustains a new compensable injury involving the same condition. If a new compensable injury occurs, all further compensable medical services and disability involving the same condition shall be processed as a new injury claim by the subsequent employer."

[3] The ALJ and the Board found the triggering date for the right-side CTS to have occurred in 1991 because, after the visit to Dr. Ebert, claimant began to wear a splint on his right wrist.

Board affirmed the ALJ's order. Liberty has not sought review of the Board's order. Therefore, the only issue before us is responsibility for claimant's left CTS.

In 1991, claimant sought treatment for recurrent headaches and pain in his left eye from Dr. Ebert, a neurologist. As part of Ebert's investigation of claimant's headaches and eye pain, he asked claimant if he had experienced any wrist pain. Claimant responded that for a number of years he had been experiencing numbness and tingling in his hands. Ebert then performed nerve conduction tests on both wrists and formally diagnosed "right carpal tunnel syndrome." His only medical recommendation with respect to claimant's hands was surgical decompression of the right hand. The Board found that claimant did not expressly request treatment for the symptoms in his left wrist. It further found that Ebert did not diagnose left CTS or recommend or provide treatment for that condition. Ebert described the recommended surgery to claimant's right wrist as elective, and claimant did not pursue it at that time. Between 1991 and 1997, claimant used splints and anti-inflammatories to counter the continuing pain, primarily in his right wrist.

In April 1997, claimant sought treatment for his worsening hand and wrist pain. Claimant was referred to Dr. Brett, a neurologist, who diagnosed "work-related bilateral median nerve entrapment and carpal tunnel syndrome (worse on the right)" and recommended right carpal tunnel release. Brett also noted that left carpal tunnel release would eventually be required. However, Dr. Woods, who performed nerve conduction tests at Brett's request, diagnosed abnormalities on claimant's right side "commonly secondary to carpal tunnel syndrome" but no "electrophysiologic evidence of a left carpal tunnel syndrome." Claimant had right carpal tunnel release surgery on May 13, 1997.

PAULA assigns error to the Board's assignment of initial responsibility for claimant's left CTS to PAULA. Under the LIER, initial or presumptive responsibility for a condition is assigned to the last period of employment where conditions could have caused claimant's disability. *Bracke v. Baza'r*, 293 Or 239, 248-49, 646 P2d 1330 (1982). The onset of disability is the "triggering date" for determining the last

potentially causal employment. If the claimant receives treatment, before experiencing time loss due to the condition, the date of the first medical treatment is the triggering date that dictates which period of employment is assigned initial responsibility for the treatment. *Reynolds Metals v. Rogers,* 157 Or App 147, 153, 967 P2d 1251 (1998), *rev den* 328 Or 365 (1999). PAULA argues that Liberty should have been assigned initial responsibility for the left CTS because the "triggering date" here was Ebert's 1991 *treatment* of claimant's left wrist.

■ The question that is critical in resolving which insurer should be assigned initial responsibility for the left CTS is whether what occurred in 1991, relating to claimant's left wrist, constituted "treatment" for purposes of the LIER. PAULA contends that, in concluding that the events of 1991 relating to claimant's left wrist *did not* constitute treatment for the purposes of the LIER, the Board incorrectly applied the rule of law established in *SAIF v. Kelly,* 130 Or App 185, 880 P2d 970 (1994). The *Kelly* rule provides that, "in assigning responsibility under the [LIER], the dispositive date is the date claimant first sought treatment for symptoms, even if the condition was not correctly diagnosed until later." *Id.* at 188.

Admittedly, there is not complete clarity in the case law as to what constitutes *treatment* for purposes of assigning initial responsibility under the LIER. We have articulated the standard for determining the triggering date in different terms. The triggering date has been described as "the date claimant first sought treatment for symptoms, even if not correctly diagnosed until later." *Kelly,* 130 Or App at 188; *SAIF v. Carey,* 63 Or App 68, 70, 662 P2d 781 (1983). Alternatively, the triggering date has been described as "the date that the claimant first began to receive treatment." *Timm v. Maley,* 125 Or App 396, 401, 865 P2d 1315 (1993), *rev den* 319 Or 81 (1994).

■ The above-described standards are not simply alternative ways of saying the same thing. It is apparent that application of these two standards for determining the triggering date will not always result in the same date. However, the objective in designating a triggering date is to identify a

point when a condition generally becomes a disability. As we explained in *Carey,* "[t]he date when a claimant first sought medical treatment, at least in most cases, has some objective relationship to the date when the claimant's condition became a disability, because it is usually documented." 63 Or App at 70. Because both the date that a claimant first *seeks* medical treatment and the date that the claimant first *receives* treatment generally have an objective relationship to when the claimant's condition becomes a disability, we believe that it is appropriate to designate a triggering date based on either event, whichever occurs first.

Applying the above standards to this case, we agree with the Board's conclusion that the triggering date for assignment of responsibility for claimant's left CTS did not occur until 1997. The Board correctly articulated the test for assigning initial responsibility. It explained that, under the LIER, the triggering date here would not be the onset of the disability, but rather the date upon which claimant first "sought treatment." The ALJ found that claimant neither sought nor received treatment for his left CTS in 1991. The ALJ explained:

"In 1991, claimant reported to neurologist John P. Ebert, M.D., for treatment of severe recurring headaches and pain in his left eye. He did not complain of, nor seek care for, hand or wrist problems. The doctor tested claimant's wrists as part of the overall test in regards to claimant's headache problems. The doctor reported, 'Nerve conduction study demonstrated a moderate right carpal tunnel syndrome with low amplitude and temporal dispersion of the motor response.' When the doctor inquired about any history of wrist problems, claimant told the doctor that for eight or nine years he had been having bilateral numbness and tingling when the weather was cold, particularly in the right hand. Dr. Ebert diagnosed possible right carpal tunnel syndrome and suggested surgical decompression of the carpal tunnel problem. Claimant did not have any left-sided problems at that time, though Dr. Ebert's nerve conduction studies were performed on each wrist." (Citations to exhibits omitted.)

On review, the Board adopted the ALJ's finding with one correction:

"Claimant did relate a prior history of left hand/wrist numbness and tingling when he was examined by Dr. Ebert in 1991. However, claimant did not expressly request treatment for his left-sided symptoms; and Dr. Ebert did not diagnose left carpal tunnel syndrome or recommend or provide treatment for that condition."

As mentioned above, PAULA's complaint is that the Board did not apply the rule of law established in *SAIF v. Kelly*, that, even when the condition is not correctly diagnosed until later, the dispositive date is the date that the claimant first sought treatment for the symptoms. PAULA asserts that the Board's conclusion that claimant did not seek treatment in 1991 was improperly based on its finding that claimant did not "expressly request treatment" at that time. However, while the Board made a finding of fact that claimant did not expressly request treatment at that time, the Board does not appear to attach the same significance to that finding that PAULA does. In view of the Board's accurate discussion of the test for determining initial responsibility, and its other findings with respect to the medical treatment claimant received in 1991, we do not believe that the Board *required* claimant to have "expressly requested treatment" as a prerequisite to establishing the trigger date under *Kelly*. Rather, the fact that claimant had not "expressly requested treatment" for his left CTS in 1991 appears to be one factor that the Board considered in reaching its determination of when claimant first sought medical treatment. The Board also found that Ebert's testing of claimant's wrists was "part of the overall test in regards to claimant's headache problems" and that "[c]laimant did not have any left-sided problems at that time, though Dr. Ebert's nerve conduction studies were performed on each wrist." An express request for treatment is not required under *Kelly*, and we do not believe the Board required one from claimant here.

■ In view of the Board's findings, we agree with its conclusion that claimant neither sought nor received treatment for his left CTS in 1991. In circumstances such as this—when a claimant does not seek treatment for a condition, and the symptoms are simply noted incidentally as part of an examination for another condition, but are not diagnosed or treated

in any other way—the date of the medical examination generally would not have a sufficient objective relationship to the date of disability to make it an appropriate triggering date for assignment of initial responsibility under the LIER.

■ PAULA's second assignment of error is that substantial evidence does not exist to support the Board's finding that claimant did not *receive* treatment for his left wrist[4] in 1991. It argues that the uncontroverted evidence indicates that claimant did receive treatment for both wrists in 1991 and that a reasonable person could not come to a different conclusion. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). There is evidence in the record that Ebert tested claimant's wrist as part of his investigation of claimant's headache and eye problems. There is also evidence that Ebert did not diagnose or treat the left wrist in any way. A reasonable person could have found, from the evidence in this case, that claimant did not *receive treatment* for left CTS in 1991. The underlying premise of PAULA's argument appears to be that testing a claimant's symptoms always constitutes medical treatment. That premise is incorrect. Under some circumstances, such as these, where the testing is incidental to the investigation of a separate medical condition and the testing results in no diagnosis or treatment, the testing itself is not treatment for purposes of assignment of initial responsibility under the LIER. We conclude that there was substantial evidence to support the Board's findings and that the Board did not err in assigning initial responsibility for claimant's left CTS to PAULA.

Affirmed.

---

[1] As noted in respondent's brief, PAULA makes this argument regarding both wrists. We assume that PAULA means claimant's left wrist.