Argued and submitted March 18, reversed and remanded for reconsideration
May 8, 2002

In the Matter of the Compensation of
Robert L. Hagebush, Claimant.

WEYERHAEUSER COMPANY,
*Petitioner,*

*v.*

Robert L. HAGEBUSH,
Eugene Sand & Gravel,
and Liberty Northwest Insurance Corporation,
*Respondents.*

99-09857, 00-02369; A115405

45 P3d 1025

John M. Pitcher argued the cause and filed the briefs for petitioner.

E. Jay Perry argued the cause for respondents Eugene Sand & Gravel and Liberty Northwest Insurance Corporation.

No appearance for respondent Robert L. Hagebush.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

BREWER, J.

**BREWER, J.**

Petitioner Weyerhaeuser Company (Weyerhaeuser) seeks judicial review of a Workers' Compensation Board order concluding that Weyerhaeuser, rather than claimant's later employer Eugene Sand & Gravel (ES&G), is responsible for claimant's right carpal tunnel syndrome. We review the board's legal conclusions for errors of law and the board's factual findings for substantial evidence. ORS 183.482(7) and (8); ORS 656.298(7). We reverse and remand for reconsideration.

The following facts are taken from the administrative law judge's (ALJ's) order. Claimant began working at Weyerhaeuser in 1973 as a tire handler and as a grease gun operator. Both jobs entailed weight-bearing, repetitive motions involving claimant's wrists and hands. In 1992, claimant sought medical treatment from Weyerhaeuser's medical department. A nurse gave claimant wrist braces, which he wore. In 1992, claimant's personal physician treated both of claimant's wrists but did not diagnose his condition at that time. Claimant quit working at Weyerhaeuser on March 31, 1999, and then began working at ES&G the next day.

Claimant filed a claim against both employers, seeking compensation for carpal tunnel syndrome in both of his wrists. The ALJ concluded that, under the last injurious exposure rule, which assigns liability to the last employer whose work conditions could have contributed to the disability, Weyerhaeuser was responsible for the claim. *See Runft v. SAIF*, 303 Or 493, 499, 739 P2d 12 (1987); *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 244, 675 P2d 1044 (1984). The ALJ noted that the triggering date for the last injurious exposure rule is "the date claimant first sought treatment for symptoms, even if the condition was not correctly diagnosed until later." *SAIF v. Kelly*, 130 Or App 185, 188, 880 P2d 970 (1994). The ALJ found that claimant sought treatment in 1992 for bilateral carpal tunnel syndrome while employed by Weyerhaeuser and that there was no evidence that claimant's employment at ES&G caused the condition to worsen.

The board affirmed the ALJ's order. The board concluded that initial responsibility for the claim was properly assigned to Weyerhaeuser. The board refused to shift responsibility for the claim to ES&G, stating that Weyerhaeuser did not contest the ALJ's determination that claimant's work exposure at ES&G did not contribute to a worsening of claimant's bilateral carpal tunnel syndrome.

On review, Weyerhaeuser assigns error to two aspects of the board's order. First, Weyerhaeuser argues that the board's finding that claimant was treated for right-side carpal tunnel syndrome while employed at Weyerhaeuser is not supported by substantial evidence.[1] Second, Weyerhaeuser argues that the board erred in failing to address its challenge to the ALJ's determination that there was no evidence that claimant's work at ES&G worsened his condition. Weyerhaeuser argues that this error caused the board to assign it responsibility for claimant's condition.

■  We begin with Weyerhaeuser's substantial evidence argument. In finding that claimant sought medical treatment for bilateral carpal tunnel syndrome in 1992, the board noted that claimant sought treatment from Weyerhaeuser's nurse, who gave claimant medical splints for both wrists. The board also found that claimant's own physician, Dr. Marie, treated both wrists in 1992. Marie's chart notes indicate that claimant "brought in his wrist splints and showed them to Diane [presumably medical staff], who suggested he go ahead and wear the cock-up splint, which he's been doing at nighttime on the R side." We conclude that the 1992 chart note constituted substantial evidence on which the board could rely to determine that claimant was treated for right-side carpal tunnel syndrome in 1992 while employed by Weyerhaeuser.

■■  Second, Weyerhaeuser argues that, even if claimant did seek medical treatment for his right wrist while employed by Weyerhaeuser, responsibility shifts to ES&G under the last injurious exposure rule. An employer who has been assigned initial responsibility for a condition may

---

[1] Weyerhaeuser concedes that there is substantial evidence to support the board's finding that claimant was treated for *left-side* carpal tunnel syndrome while in Weyerhaeuser's employ.

invoke the last injurious exposure rule to shift responsibility for the condition to a subsequent employer by establishing that the subsequent employment actually contributed to a worsening of the condition. *Oregon Boiler Works v. Lott*, 115 Or App 70, 74, 836 P2d 756 (1992). The ALJ refused to shift responsibility to ES&G. She concluded that "[t]here is no evidence that claimant's employment exposure at [ES&G] worsened his bilateral and progressive condition. Consequently, [Weyerhaeuser] is responsible for the bilateral condition."

Before the board, in arguing that claimant's work at ES&G contributed to claimant's bilateral carpal tunnel syndrome, Weyerhaeuser relied on the expert opinion of Dr. Jewell. In its brief submitted to the board, Weyerhaeuser argued:

"[Jewell] opined that 'I think the work that [claimant] was performing at [ES&G] was repetitious in nature. * * * *I think that this would be considered contributory.*' [Jewell's] opinion supports a finding that the [employment at ES&G] provided *actual*, not just potential, contribution. [The ALJ] erred in her finding that 'there is no evidence that claimant's current employment exposure at [ES&G] worsened his bilateral progressive condition.' " (Emphasis in original.)

However, the board failed to consider that argument. It concluded:

"Weyerhaeuser does not specifically contest the ALJ's determination that there is no persuasive evidence that claimant's work exposure at [ES&G] actually contributed to a worsening of claimant's bilateral [carpal tunnel syndrome] condition. [*Oregon Boiler Works*, 115 Or App at 74]. Accordingly, responsibility remains with Weyerhaeuser."

The ALJ found that there was *no* evidence of a worsening of claimant's bilateral carpal tunnel syndrome. Weyerhaeuser contended before the board that the ALJ's determination was erroneous. In making that argument, Weyerhaeuser directly challenged the finding underlying the ALJ's conclusion that responsibility remained with Weyerhaeuser. The board erred in failing to address that argument.

Reversed and remanded for reconsideration.