Argued and submitted March 25, affirmed July 9, petition for review denied October 2, 2003 (336 Or 60)

In the Matter of the Compensation of
Johnny E. Marble, Claimant.

FOSTER WHEELER CORPORATION
and Liberty Northwest Insurance Corporation,
*Petitioners,*

*v.*

Johnny E. MARBLE,
*Respondent.*

99-08754; A117337

72 P3d 645

Deryl K. Nielsen argued the cause for petitioners. With him on the brief was Deryl K. Nielsen, P.C.

Martin L. Alvey argued the cause for respondent. With him on the brief was Martin L. Alvey, P.C.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

The Workers' Compensation Board (board) held that claimant's last employer and its insurer (employer) were responsible for claimant's bilateral hearing loss. Petitioners contend that the board improperly applied the last injurious exposure rule and erred in not apportioning responsibility among claimant's various employers. We affirm.

Over a career spanning more than 30 years, claimant worked as a rock driller, ironworker, and boilermaker. His job consistently exposed him to loud noises. Sometime in the 1960s, he began to notice hearing loss. In November 1996, he had an audiogram that was performed at his union hall as part of a general health screening intended to detect asbestos-related problems. The performing audiologist told him that he was "legally deaf." In January 1999, claimant took another audiogram from a hearing center recommended by a coworker. The results of the examination reflected substantial hearing loss. Claimant did not follow up on either exam by visiting a physician or taking any action to remedy or alleviate the hearing loss.

On May 14, 1999, claimant began working for employer. Claimant's job entailed the use of jackhammers and metal bars that caused a high level of noise. That job ended approximately two weeks later. In September 1999, claimant's attorney submitted a claim with employer asserting hearing loss in both ears, "progressive in onset." Employer denied compensability and responsibility for the claim, and claimant requested a hearing before an administrative law judge (ALJ).

At employer's request, Dr. Hodgson examined claimant in January 2000. He referred claimant for an audiogram, which, consistently with previous audiograms, revealed significant hearing loss. The results of that audiogram disclosed slightly more hearing loss than the one performed a year earlier. Hodgson concluded that claimant's many years of work as an ironworker and boilermaker, cumulatively, were the major contributing cause of the hearing loss. He believed that claimant's work for employer, although it was "of the type that could have contributed to [claimant's] hearing loss[,]"

probably did not itself worsen that loss; Hodgson explained that the difference between the results of the 1999 audiogram and the 2000 audiogram were probably due to "test/retest variability." He also stated that it was "not impossible" that claimant's work for employer contributed to the hearing loss.

At the hearing, employer withdrew the denial of compensability but maintained that responsibility for claimant's hearing loss should be assigned to claimant's prior employers. The ALJ disagreed and assigned responsibility to employer under the last injurious exposure rule (LIER). The board affirmed.

■ Employer does not contend that the board misstated or misunderstood the LIER. Under that rule, liability is presumptively assigned to the potentially causal employer for whom claimant is working at the time claimant first seeks or receives medical treatment, whichever comes first. *Bracke v. Baza'r*, 293 Or 239, 248, 646 P2d 1330 (1982); *Agricomp Ins. v. Tapp*, 169 Or App 208, 212-13, 7 P3d 764, *rev den*, 331 Or 244 (2000). A potentially causal employer is one who provides circumstances of employment of the type that could contribute to the disabling condition. *Bracke*, 293 Or at 248-49. A presumptively responsible employer or insurer may rebut that presumptive responsibility by proving (1) that circumstances of employment at its workplace could not possibly have caused or exacerbated the condition; or (2) that the condition was caused solely by conditions at one or more previous employments. *Roseburg Forest Products v. Long*, 325 Or 305, 313, 937 P2d 517 (1997).

The dispute in this case centers on the board's application of the LIER. The board determined that claimant's first medical treatment for his hearing loss occurred when he was evaluated by Hodgson in January 2000 and that, therefore, presumptive responsibility for claimant's injury lay with petitioners. The board also determined, based largely on Hodgson's testimony, that petitioners did not rebut the presumption by showing that conditions at employer's workplace could not possibly have caused or exacerbated claimant's hearing loss or by showing that the hearing loss was

caused solely by conditions at one or more of claimant's previous employers.

■　　　On judicial review, employer argues first that the board erred when it determined that claimant first sought or received medical treatment when he visited Hodgson in January 2000. Employer maintains that claimant first sought medical treatment, at the latest, when he received an audiogram in January 1999, before he started working for employer. In contrast, claimant asserts that his previous audiograms in 1996 and January 1999 were simply self-help measures that did not involve seeking or receiving any medical treatment.

We agree with claimant. According to *Stedman's Medical Dictionary* 1866 (27th ed 2000), "treatment" is "[m]edical or surgical management of a patient." To "treat" is "[t]o manage a disease by medicinal, surgical, or other measures; to care for a patient medically or surgically." *Id.* In a similar vein, *Webster's Third New Int'l Dictionary* 2435 (unabridged ed 1993) reports that to "treat" a patient is "to care for * * * medically or surgically : deal with by medical or surgical means : give a medical treatment to[.]" "Medical treatment," then, involves either ongoing medical care or application of some technique, drug, or other action designed either to alleviate or cure a disease or injury. No "medical treatment" occurred at claimant's first two audiograms. A union-provided audiogram in 1996, performed as part of a general health screening, confirmed claimant's suspicion that he had suffered hearing loss, as did a second audiogram that claimant took in 1999 in preparation for his retirement. In neither case did he receive any care for his condition. Nobody performed any action designed to cure or alleviate it. The board therefore did not err in accepting the ALJ's reasoning that "[t]here was no treatment associated with the audiograms, at least none that I can discern from this record." The onset of claimant's disability as that event is defined for purposes of the LIER did not occur until 2000, after he began working for employer. Because it is undisputed that the work claimant performed for employer was of the type that would cause or exacerbate hearing loss, employer is presumptively responsible.

■ Further, the board correctly concluded that employer could not rebut the presumptive responsibility because it could not prove (1) that it was impossible for conditions at the workplace to have caused or exacerbated claimant's hearing loss or (2) that his hearing loss was caused solely by conditions at one of his previous employers.

As relevant to the first issue, Hodgson noted that the 2000 audiogram indicated more hearing loss than the 1999 audiogram but concluded that the indication resulted not from hearing loss but from "test/retest variability." However, he also concluded that it was *not* impossible for claimant's work for employer to have contributed to claimant's hearing loss. From this evidence, a reasonable person could conclude that employer failed to demonstrate that it *was* impossible for claimant's employment with employer to have contributed to his hearing loss.

As relevant to the second issue, Hodgson attributed claimant's hearing loss to a "combination of noise-induced hearing loss from gun use and his long occupation in the iron worker and boilermakers's union[.]" As we have decided, substantial evidence supports the finding that claimant's work as an ironworker and boilermaker for employer could have contributed to that loss. It necessarily follows that substantial evidence supports the board's finding that employer failed to prove that claimant's previous employment was the *sole* cause of his hearing loss. Employer thus cannot avoid responsibility under the last injurious exposure rule under either exception.

■ Finally, employer asserts that the board should have employed the doctrine of apportionment to "decide that no part of claimant's hearing loss condition" be attributed to employer and, instead, that the responsibility should be apportioned among all of claimant's previous employers. Apportionment could be appropriate if the board had concluded that none of claimant's hearing loss could have been caused by working for employer. *Cf. RLC Industries v. Sun Studs, Inc.*, 172 Or App 233, 16 P3d 1208 (2001) (apportionment appropriate where work for otherwise responsible employer could *not* have contributed to compensable condition). It could also be appropriate if "the loss attributable to

successive employments can be determined by audiograms[,]" *James River Corp. v. Green*, 164 Or App 649, 653, 993 P2d 157 (1999), or if the "injuries are so distinct that it is possible to segregate them in terms of causation," *Nomeland v. City of Portland*, 106 Or App 77, 81, 806 P2d 175 (1991). None of those circumstances is present here.

Affirmed.