Argued and submitted January 4, affirmed March 2, 2005

In the Matter of the Compensation of
Dan A. Gilliland, Claimant.

LIBERTY NORTHWEST INSURANCE CORPORATION
and Holley Moulding, Inc.,
*Petitioners,*

*v.*

Dan A. GILLILAND,
SAIF Corporation,
and Murphy Plywood,
*Respondents.*

02-07278, 02-03568; A123111

107 P3d 687

Judicial Review from Workers' Compensation Board.

David O. Wilson argued the cause and filed the brief for petitioners.

Jerome P. Larkin argued the cause and filed the brief for respondents SAIF Corporation and Murphy Plywood.

James L. Edmunson waived appearance for respondent Dan A. Gilliland.

Before Landau, Presiding Judge, and Armstrong, Judge, and Deits, Judge pro tempore.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this workers' compensation case is which of two employers is responsible for claimant's compensable carpal tunnel syndrome. The Workers' Compensation Board (board) concluded that Holley Moulding (Holley) is responsible because claimant first sought medical treatment while working for that employer. Holley seeks review, arguing that Murphy Plywood (Murphy), claimant's earlier employer, is responsible because claimant actually sought medical treatment while working there, notwithstanding the board's finding to the contrary. We affirm.

The relevant facts are not in dispute. In 2001, claimant worked for Murphy, grading and pulling veneer on a dry chain. In September 2001, claimant experienced symptoms of swelling and numbness in his right forearm. He reported the symptoms to his supervisor. Claimant did not see a physician. Claimant stopped working for Murphy in October.

In October or November, after talking with an acquaintance who had suffered from carpal tunnel syndrome, claimant called a clinic. He spoke with "one of the ladies at the front desk" who was not a doctor and asked whether it would be a good idea for him to take ibuprofen and wear a splint on his wrist. The person with whom he spoke told him that it "would be a very helpful thing, probably" to wear the splint or at least that "[i]t wouldn't hurt." After that, he purchased a splint with his own money and used it.

In January 2002, claimant began working for Holley wrapping shrink wrap material around bundles of wood products. On January 17, 2002, he went to a clinic and saw a nurse practitioner who diagnosed carpal tunnel syndrome and referred claimant to a physician. After seeing a physician, claimant filed a claim for carpal tunnel syndrome. Both Holley and Murphy denied responsibility.

The administrative law judge (ALJ) concluded that Holley was responsible. The ALJ reasoned that, because Holley was claimant's employer when he first sought medical treatment, under the last injurious exposure rule, it was presumptively responsible for the claim. The ALJ then

explained that, based on the medical evidence, Holley was unable to rebut that presumption and shift responsibility to another employer.

Holley appealed to the board, arguing that claimant actually had sought treatment in October or November of 2001, when he telephoned a clinic about whether to take ibuprofen and wear a splint. The board rejected that argument, explaining that "claimant's initial actions in contacting the clinic and asking advice over the phone regarding whether a splint would be useful (as suggested by an acquaintance) constituted 'self-help' measures and did not rise to the level of 'medical treatment.'"

■ On judicial review, Holley argues that the board erred in concluding that claimant's actions in contacting the clinic did not amount to "seeking medical treatment," which triggered the presumption that Murphy is responsible for claimant's compensable condition. According to Holley, merely because it happened that claimant talked to someone who was not a medical professional does not mean that he did not *seek* treatment from a medical professional. The fact that he made the phone call to the clinic, Holley argues, suffices to establish that claimant sought medical treatment, regardless of what actually transpired during the conversation. Murphy responds that whether claimant's actions constituted seeking medical treatment is a factual question, and the board's findings in that regard are supported by substantial evidence.

■ The last injurious exposure rule is a judicially created rule that serves two functions. It serves as a rule of assignment of liability in cases of successive employment and as a rule of proof. As the Supreme Court explained in its seminal decision on the subject, *Bracke v. Baza'r*, 293 Or 239, 248-49, 646 P2d 1330 (1982),

"[u]nder the last injurious exposure rule of assignment of liability in cases of successive employment, each of which has contributed to the totality of the disease, the potentially causal employer at the time disability occurs is assigned liability for the cumulative whole. If the claimant is not in potentially causal employment when disability occurs, the

last such employer is liable. Under the last injurious exposure rule of proof, if claimant proves that a disease was triggered at one time, claimant has carried his burden of proof by establishing that the employer on the risk at the time disability occurred could have caused it, even though previous employers provided conditions which could have caused it, and the rule relieves a claimant of any burden of proving actual causation. If a disability occurs when a claimant is no longer subject to potentially causal conditions, the last employment providing such conditions is deemed proved to have caused the disease even though the claimant has not proved that the conditions of last employment were the actual cause of the disease and even though a previous employment also possibly caused the disease. Date of disability controls."

What is the "date of disability" for purposes of the rule of proof? We first addressed that question in *SAIF v. Carey*, 63 Or App 68, 662 P2d 781 (1983). The issue in that case was which of two employers was responsible for the claimant's compensable hearing loss claim. One employer suggested that the "triggering date" for the presumption imposed by the last injurious exposure rule should be the date when the symptoms first appeared. The other employer suggested that the triggering date should be the date when the claimant "first sought medical attention." We concluded that, given the purpose of the rule as the Supreme Court explained it in *Bracke*, "the most logical triggering event in the case of a non-disabling injury or disease is the date when medical treatment is first sought." *Carey*, 63 Or App at 70. We selected that date because "[t]he date when a claimant first sought medical treatment, at least in most cases, has some objective relationship to the date when claimant's condition became a disability, *because it is usually documented.*" *Id.* (emphasis added).

The same day that we decided *Carey*, we also issued an opinion in *SAIF v. Luhrs*, 63 Or App 78, 663 P2d 418 (1983), in which the claimant consulted with a physician because of pain in the claimant's hand and shoulders, but the physician did not diagnose carpal tunnel syndrome. When the claimant later filed a claim for carpal tunnel syndrome, the employer at the time of the consultation argued that the last injurious exposure rule was not triggered at that point,

because the physician had not diagnosed the claimant as suffering from that condition. We concluded that the consultation with the physician was sufficient, whether or not the diagnosis had been correct. *Id.* at 81.

In *Timm v. Maley*, 125 Or App 396, 865 P2d 1315 (1993), *rev den*, 319 Or 81 (1994), the claimant sought and received treatment during the same visit to her doctor. When an issue of responsibility arose upon the filing of a claim, we reviewed *Bracke*, *Carey*, and *Luhrs* and said that "[t]he rule to be drawn from those decisions is that, if a claimant receives treatment for a compensable condition, * * * the date that the claimant first began to receive treatment related to the compensable condition is determinative for the purpose of assigning initial responsibility for the claim[.]" *Timm*, 125 Or App at 401.

In subsequent cases, we tended to describe the "triggering date" as either the "date claimant first sought treatment for symptoms," *SAIF v. Kelly*, 130 Or App 185, 188, 880 P2d 970 (1994), or as the date the claimant "first receive[d] medical services for the condition," *UPS v. Likos*, 143 Or App 486, 489, 924 P2d 857 (1996). We have done so, however, with the original objective that we described in *Carey* in mind.

Thus, in *Agricomp Ins. v. Tapp*, 169 Or App 208, 212-13, 7 P3d 764, *rev den*, 331 Or 244 (2000), we explained the rule in the following terms:

> "We have articulated the standard for determining the triggering date in different terms. The triggering date has been described as 'the date claimant first sought treatment for symptoms, even if not correctly diagnosed until later.' *Kelly*, 130 Or App at 188; *SAIF v. Carey*, 63 Or App 68, 70, 662 P2d 781 (1983). Alternatively, the triggering date has been described as 'the date that the claimant first began to receive treatment.' *Timm v. Maley*, 125 Or App 396, 401, 865 P2d 1315 (1993), *rev den* 319 Or 81 (1994).
>
> "The above-described standards are not simply alternative ways of saying the same thing. It is apparent that application of these two standards for determining the triggering date will not always result in the same date. However, the objective in designating a triggering date is to

identify a point when a condition generally becomes a disability. As we explained in *Carey*, '[t]he date when a claimant first sought medical treatment, at least in most cases, has some objective relationship to the date when the claimant's condition became a disability, because it is usually documented.' 63 Or App at 70. Because both the date that a claimant first *seeks* medical treatment and the date that the claimant first *receives* treatment generally have an objective relationship to when the claimant's condition becomes a disability, we believe that it is appropriate to designate a triggering date based on either event, whichever occurs first."

(Emphasis and brackets in original.)

In a series of more recent decisions, we have described the rule in more abbreviated fashion. In *Foster Wheeler Corp. v. Marble*, 188 Or App 579, 582, 72 P3d 645, *rev den*, 336 Or 60 (2003), for example, we stated that, under the last injurious exposure rule, "liability is presumptively assigned to the potentially causal employer for whom claimant is working at the time claimant first seeks or receives medical treatment, whichever comes first." *See also Raytheon Constructors v. Tobola*, 195 Or App 396, 400-01, 97 P3d 1278 (2004) (same formulation).

Precisely when a claimant first seeks or receives medical treatment can be a question of fact or law, depending on the nature of the dispute. If, for example, the question is *when* certain events occurred, that is a question of fact, and the board's findings as to the timing of those events will be subject on review to the usual substantial evidence evaluation required for findings of fact. *See, e.g., Sunrise Electric, Inc. v. Ramirez*, 181 Or App 401, 407, 45 P3d 1057 (2002) ("when" the claimant first sought or received treatment is a question of fact). When, however, there is no dispute as to the events and, instead, the dispute concerns whether those events constitute seeking or receiving medical treatment, that is an issue of law. *See, e.g., Raytheon*, 195 Or App at 401 (whether what the claimant did amounted to seeking or receiving medical treatment treated as question of law).

With the foregoing principles in mind, we return to the parties' arguments. As we have noted, there is no dispute as to the events that occurred or when they happened. The

only dispute is whether the events that occurred—in particular, claimant's telephone call to the clinic—constituted seeking medical treatment for purposes of applying the last injurious exposure rule. That is a question of law.

Holley's principal argument is that the act of making the telephone call by itself constitutes seeking medical treatment, whether or not claimant actually spoke with a medical professional. According to Holley, "[c]laimant's call to the medical clinic logically constitutes seeking medical treatment * * * because he sought relief from the symptoms of his compensable carpal tunnel syndrome." The argument is not unreasonable, at least in the abstract. In a sense, when claimant picked up the telephone he was "seeking" medical treatment in the dictionary sense of the term. *See Webster's Third New Int'l Dictionary* 2055 (unabridged ed 2002) (defining verb to "seek" as, among other things, "to inquire for").

We nevertheless are not persuaded for two reasons. First, Holley's argument neglects to consider that the object of a claimant's seeking must be "medical treatment." As we have noted in other cases, "medical treatment" involves "either ongoing medical care or application of some technique, drug, or other action designed either to alleviate or cure a disease or injury." *Foster Wheeler Corp.*, 188 Or App at 583. Implicitly, medical treatment of a condition is treatment provided by a person authorized to provide it under the workers' compensation laws. Thus, for example, in *Foster Wheeler Corp.*, we concluded that the claimant first sought medical treatment when he consulted with a physician for treatment of his hearing loss, not when he took an audiogram from a local hearing center recommended by a coworker in preparation for his retirement. *Id.* Seeking medical treatment, in other words, implies communicating with a medical professional who can provide the treatment.

Second, and consistently with the foregoing implication, our prior case law explicitly emphasizes that the purpose of the triggering date is to identify an event that bears an objective relation to the onset of disability. In particular, as we noted in *Tapp* and *Carey*, we rely on the date that a claimant either seeks or receives medical treatment "because [that date] is usually documented." *Tapp*, 169 Or App at 213;

*Carey*, 63 Or App at 70. Documentation usually occurs when a claimant actually consults with a medical professional who is authorized by law to provide medical treatment. It is much less likely to occur—if it occurs at all—when a claimant anonymously calls "one of the ladies at the front desk" of an open clinic to ask whether he should take ibuprofen and wear a drug-store wrist splint.

We therefore reject Holley's contention that "seeking" medical treatment occurs whenever a claimant takes any action designed to obtain information about a condition, whether or not that action results in actual contact with a medical professional authorized to provide medical treatment. We conclude that the board correctly determined that claimant's telephone call to the clinic did not constitute seeking treatment for the purposes of the application of the last injurious exposure rule.

Affirmed.