Argued and submitted July 24, affirmed October 31, 2007

In the Matter of the Compensation of
Lionel M. Rios, Claimant.

AIG CLAIM SERVICES
and Coe Manufacturing,
*Petitioners,*

*v.*

Lionel M. RIOS,
American Protection Insurance Company/Broadspire,
Safeco Insurance Company/Coe Manufacturing,
Special Districts Association of Oregon,
and SAIF Corporation,
*Respondents.*

Workers' Compensation Board
0408312, 0405311, 0405310, 0403816,
0402803, 0402256, 0308153;
A132821

170 P3d 1110

Jerald P. Keene argued the cause and filed the briefs for petitioners.

Brad G. Garber argued the cause for respondent American Protection Insurance Company/Broadspire. With him on the brief was Wallace, Klor & Mann, P.C.

Alexander D. Libmann argued the cause for respondent Safeco Insurance Company/Coe Manufacturing. On the brief was David L. Bussman.

Howard R. Nielsen argued the cause for respondent Special Districts Association of Oregon. With him on the brief was The Gilroy Law Firm, P.C.

No appearance for respondent Lionel M. Rios.

No appearance for respondent SAIF Corporation.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.

LANDAU, P. J.

## LANDAU, P. J.

This is a workers' compensation case in which the question is which of several insurance carriers is responsible for claimant's compensable hearing loss. Under the last injurious exposure rule, the answer to that question is that responsibility is presumptively assigned to the insurer on the risk for the last period of employment during which the "onset of disability" occurred. In this case, the Workers' Compensation Board assigned responsibility to AIG Claim Services (AIG), because it was employer's insurance carrier at the time that claimant retired from his employment and filed his hearing loss claim. AIG seeks review, arguing that the board erred because the onset of disability actually occurred approximately ten years earlier. We affirm.

The relevant facts are not in dispute. Claimant worked for employer as a welder-fabricator from 1984 through 2001. Claimant was exposed to noise at work. In "1995 or so," claimant went to "Miracle Ear," a hearing aid retailer located in a Montgomery Ward department store, to purchase some custom-fitted ear plugs for work. An employee of Miracle Ear gave claimant a free hearing test and told him that he had hearing loss. The Miracle Ear employee also recommended that claimant purchase hearing aids. Claimant testified that the Miracle Ear employee demonstrated to him that the hearing aids would improve his hearing. Claimant, however, did not purchase the hearing aids. It is not known whether the Miracle Ear employee was either an audiologist or a licensed hearing aid specialist.

In 2001, claimant retired. In 2003, he sought treatment for hearing loss from Dr. Lindgren, who informed him that he had noise-induced hearing loss and prescribed hearing aids. Claimant filed a workers' compensation claim. It is undisputed that claimant's hearing loss was caused by his employment and that claimant did not lose time from work as a result of the hearing loss.

AIG was the insurer on the risk at the time claimant left his employment and when he filed his claim. Consequently, it was assigned presumptive liability for claimant's

hearing loss under ORS 656.307. AIG disputed its responsibility, contending that responsibility should be assigned to the insurer who provided coverage for employer in 1995, when claimant received the hearing test from Miracle Ear. According to AIG, that was the onset of claimant's disability.

The board upheld the assignment of responsibility to AIG, reasoning that, because claimant had not lost time from work as a result of his hearing loss, the pertinent event for determining the assignment of responsibility was the date that claimant first sought or obtained medical treatment for his hearing loss. Citing its order in *Charles M. Spivey*, 56 Van Natta 93 (2004), *aff'd without opinion sub nom Liberty Northwest Ins. Corp. v. Spivey*, 205 Or App 111, 132 P3d 1075 (2006), the board explained that, because there was no evidence of the tester's licensing, claimant's visit to Miracle Ear did not qualify as medical treatment. The board held that claimant first sought and obtained medical treatment from Lindgren in 2003.

■ On review, AIG contends that the board erred in concluding that claimant's visit to Miracle Ear was not "medical treatment" that triggered responsibility for claimant's hearing loss. In the alternative, AIG contends that the board erred in failing to consider evidence that claimant was suffering actual disability as a result of his hearing loss at the time he visited Miracle Ear.

■ When there is a dispute about which of several insurers is responsible for an occupational disease, initial or presumptive responsibility for the disease is assigned to the insurer during the last period of employment when conditions could have contributed to the claimant's disability. *Roseburg Forest Products v. Long*, 325 Or 305, 314, 937 P2d 517 (1997). The triggering date for determining which insurer must provide coverage is the "onset of disability." *Bracke v. Baza'r*, 293 Or 239, 248, 646 P2d 1330 (1982).

Typically, hearing loss claims do not involve time loss from work. For that reason, determining the "onset of disability" in the context of a hearing loss claim can be particularly challenging. In *SAIF v. Carey*, 63 Or App 68, 662 P2d 781 (1983), we said that when a worker does not lose time from work as a result of a claimed hearing loss, the date the

claimant first sought medical treatment is the critical date for determining responsibility. As we explained, "[t]he date when a claimant first sought medical treatment, at least in most cases, has some objective relationship to the date when the claimant's condition became a disability, because it is usually documented." *Id.* at 70. *See also Timm v. Maley,* 125 Or App 396, 401, 865 P2d 1315 (1993), *rev den,* 319 Or 81 (1994) (if a claimant receives treatment for a compensable condition before experiencing time loss, the date the claimant began to receive treatment is a triggering date for purposes of assigning responsibility).

In *Agricomp Ins. v. Tapp,* 169 Or App 208, 213, 7 P3d 764, *rev den,* 331 Or 244 (2000), we held that the date a claimant *seeks* or *receives* treatment both bear some objective relationship to the date of disability. Thus, we concluded, in the absence of time loss, the earlier of the two dates is the triggering date for the purpose of determining the "onset of disability." *See Liberty Northwest Ins. Corp. v. Gilliland,* 198 Or App 84, 90, 107 P3d 687 (2005) (discussing cases).

We have, on several occasions, discussed what constitutes "seeking or receiving" medical treatment in the context of claims that do involve time loss. Our cases have addressed both the nature of the treatment and the qualifications of the treatment provider.

In *Foster Wheeler Corp. v. Marble,* 188 Or App 579, 582, 72 P3d 645, *rev den,* 336 Or 60 (2003), we said that "medical treatment" "involves either ongoing medical care or application of some technique, drug, or other action designed either to alleviate or cure a disease or injury." In that case, we held that a claimant who had not received care after an audiogram that showed a loss of hearing had not received medical treatment. *Id.* at 583.

In *Raytheon Constructors v. Tobola,* 195 Or App 396, 97 P3d 1278 (2004), we held that an audiologist is a person authorized to provide medical treatment under the Workers' Compensation Act and, further, that a recommendation to purchase hearing aids constitutes "treatment," even if the claimant does not purchase the hearing aids.[1] *Id.* at 401-02.

---

[1] In noting in *Raytheon Constructors,* 195 Or App at 400, that ORS 656.802(1)(a) provides that a disease is compensable if it *requires* medical services,

In *Gilliland*, we explained that "seeking medical treatment" implies communicating with a medical professional who can provide the treatment, *i.e.*, a person authorized to provide treatment under the workers' compensation laws. 198 Or App at 91. We held that a medical clinic receptionist is not such a person. *Id*.

And, in *SAIF v. Johnson*, 198 Or App 504, 510, 108 P3d 662 (2005), we held that a licensed hearing aid specialist is a "person duly licensed to practice one or more of the healing arts" and therefore is authorized under the workers' compensation laws to provide medical treatment.

In this case, claimant did not experience time loss in connection with his hearing loss. AIG contends that time loss is not the only indicator of compensable disability and that, even in the absence of time loss, the board should have considered evidence that claimant had suffered a disabling hearing loss at a time prior to AIG's period of coverage. In other words, as a means of determining the "triggering date" for the purpose of assigning responsibility under the last injurious exposure rule, AIG would have the board determine when claimant first experienced symptoms of disabling hearing loss that would have entitled him to benefits for permanent disability. In *Carey*, however, we rejected the contention that the appearance of symptoms is an accurate benchmark for the "onset of disability." 63 Or App at 70. In the absence of time loss from work, the inquiry turns to when the claimant first sought or received medical treatment. *Agricomp*, 169 Or App at 212.

Thus, the determinative question is whether claimant sought or received medical treatment when he visited Miracle Ear. We conclude for two reasons that he did not.

First, the board determined as a matter of fact that claimant did not seek treatment from Miracle Ear for his hearing loss. That finding is supported by substantial evidence. Claimant testified that he went to Miracle Ear for the

regardless of whether it *results in* medical services, we did not intend to describe yet a third means of determining the "onset of disability" for the purpose of assigning responsibility under the last injurious exposure rule.

purpose of buying ear plugs and did not seek to have his hearing tested, but that he took a hearing test when it was offered as a "pre-service."

Second, even if claimant received from the Miracle Ear employee "treatment" in the form of a recommendation that claimant purchase hearing aids, the board found that such treatment was not *medical* treatment. *See Raytheon Constructors,* 195 Or App at 402. That finding also is supported by substantial evidence. The record shows that it is unknown whether the person at Miracle Ear who made the recommendation was authorized under the workers' compensation laws to provide medical treatment, *i.e.,* was an audiologist or a licensed hearing aid specialist. *See Johnson,* 198 Or App at 510; *Gilliland,* 198 Or App at 91.

Affirmed.