Argued and submitted October 26, 2001, reversed and remanded for
reconsideration May 8, 2002

In the Matter of the Compensation of
Marjorie A. Ramirez, Claimant.

SUNRISE ELECTRIC, INC.,
and Farmers Insurance Company,
*Petitioners,*

*v.*

Marjorie A. RAMIREZ;
Christenson Electric;
Liberty Northwest Insurance Corp.;
Oregon Electric Construction;
and SAIF Corporation,
*Respondents.*

99-08314; A112564

45 P3d 1057

Peter C. Davis argued the cause for petitioners. With him
on the briefs was Cavanagh & Zipse.

Gordon S. Gannicott argued the cause for respondent Marjorie A. Ramirez. With him on the brief was Hollander, Lebenbaum & Gannicott.

Conway C. McAllister filed the brief for respondents Christenson Electric and Liberty Northwest Insurance Corporation.

Jerome P. Larkin argued the cause and filed the brief for respondents Oregon Electric Construction and SAIF Corporation.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

The Workers' Compensation Board applied the last injurious exposure rule to assign Farmers Insurance Company[1] responsibility for claimant's trigger finger condition. Farmers seeks review of the Board's order. We reverse and remand.

In 1995, claimant began participating in a four-year apprenticeship electrician program. From 1995 until January 1997, she worked for Christenson Electric, which is insured by Liberty Northwest. In April 1996, claimant was diagnosed with bilateral carpal tunnel syndrome. She sought treatment from Dr. Trochmann, who eventually referred her to Dr. Van Allen. Claimant began treatment for her carpal tunnel condition with Van Allen in May 1997. At that time, claimant was working for Oregon Electrical Construction, which is insured by SAIF. Van Allen performed both right and left carpal tunnel releases in 1997.[2]

At the same time that she began treatment for her carpal tunnel condition in 1997, claimant also was having problems with her thumbs locking. Claimant mentioned this difficulty to Van Allen, who believed that the condition might resolve itself while claimant was off work following her carpal tunnel surgery. Van Allen made no chart notes regarding claimant's complaints about her thumbs, and claimant received no specific treatment related to her thumbs.

In 1998, claimant's thumbs began to lock more, causing her further discomfort. At that time, she was employed by Sunrise Electric, Inc., which is insured by Farmers. Claimant visited Van Allen again in February 1998, seeking treatment for her thumb condition. Van Allen noted that claimant had "frank triggering of both thumbs" and treated her right thumb with an injection. Claimant filed claims for the trigger thumb condition with SAIF and Liberty Northwest. Both insurers denied compensability and responsibility. Claimant

---

[1] Both Sunrise Electric, Inc., and Farmers have petitioned for review of the Board's order. We refer to them collectively as Farmers.

[2] In a separate proceeding, an administrative law judge found claimant's carpal tunnel condition compensable and found SAIF, on behalf of Oregon Electric Construction, responsible.

sought a hearing before an administrative law judge (ALJ), who found that the trigger thumb condition was compensable and assigned responsibility for that condition to Farmers.

On appeal, the Board agreed that Farmers was responsible for claimant's thumb condition.[3] The Board began by setting out the general rule:

"In *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 241[, 675 P2d 1044] (1984), the Court stated: 'In an occupational disease context, the rule is this: If a worker establishes that disability was caused by disease resulting from causal conditions at two or more places of employment, the last employment providing potentially causal conditions is deemed to have caused the disease.' The onset of disability is the 'triggering date' for determining which employment is the last potentially causal employment. *Bracke v. Baza'r*, 293 Or 239, 248[, 646 P2d 1330] (1982)."

The Board then went on to explain that the onset of the disability, or the triggering date, is the date claimant either first sought or first received treatment. *Agricomp Ins. v. Tapp*, 169 Or App 208, 212-13, 7 P3d 764, *rev den* 331 Or 244 (2000). The Board then reasoned:

"Because the purpose in designating a triggering date is to identify a point when a condition generally becomes a disability, the *Tapp* court has determined that the event (seeking or receiving treatment) used to establish the triggering date must have a sufficient objective relationship to the date of disability to make it an appropriate triggering date for assignment of initial responsibility under the [last injurious exposure rule (LIER)]."

Applying that test, the Board found that Van Allen first treated claimant's trigger thumb condition on February 16, 1998, when Farmers was on the risk. The Board also noted that claimant mentioned her trigger thumb problems to Van Allen earlier but that he did not regard the condition as symptomatic enough to warrant any specific treatment. The Board then reasoned:

---

[3] The Board also agreed with the ALJ that the condition was compensable. No one has challenged that ruling on review.

"Prior to February 1998, Dr. Van Allen considered claimant's thumb condition mild enough to resolve on its own, without treatment, incident to claimant being off work for carpal tunnel releases. Under these circumstances, even though claimant described her thumb problem to Dr. Van Allen at various times before February 16, 1998, we do not consider that event to be of a sufficient objective relationship to the date of disability to make it an appropriate triggering date for the assignment of initial responsibility under the LIER."

Based on that reasoning, the Board concluded that February 1998 was the appropriate triggering date for the assignment of initial responsibility under the LIER. Because claimant worked for Sunrise at that time, the Board ruled that Farmers was responsible for claimant's thumb condition.

Farmers has petitioned for review of the Board's order. It argues that the Board's order is based on a misunderstanding of our decision in *Tapp*. Specifically, Farmers argues that the Board has added a new requirement to the rule that we set out in *Tapp*. It also argues that the Board's determination that the triggering date occurred while claimant was employed at Sunrise Electric is not supported by substantial evidence.

Because Farmers' first argument depends upon what we held in *Tapp*, we begin by examining our decision in that case. In *Tapp*, the claimant sought treatment in 1991 for recurrent headaches and pain in his eye. As part of his medical examination, the doctor asked the claimant if he had experienced wrist pain. The claimant reported numbness and tingling in both hands, and the doctor diagnosed carpal tunnel syndrome in the right hand. No further treatment or diagnosis occurred in regard to the claimant's right hand, and the claimant did not file a claim with his employer at that time.[4]

Several years later, when the claimant was working for a new employer, he experienced increased pain in his wrists. The claimant's doctor diagnosed bilateral carpal tunnel syndrome that eventually led to a carpal tunnel release.

[4] The doctor stated that he recommended surgery but that such surgery was elective. The claimant did not pursue any further treatment.

After the claimant filed a claim with his employer for his left-hand carpal tunnel condition, his employer denied responsibility for that condition. The Board rejected the employer's denial and, applying the LIER, assigned it responsibility for the claimant's condition.

On appeal, the issue was whether the Board had properly applied the LIER when it assigned responsibility to the current employer for the claimant's left-hand carpal tunnel condition. We began by stating the general rule that responsibility for a condition is assigned initially to the last employer where conditions could have caused the claimant's condition. *Tapp*, 169 Or App at 211. We explained that the onset of the disability is the "triggering date" for determining responsibility. *Id.* If the claimant receives treatment before experiencing time loss due to the condition, the "date of the first medical treatment is the triggering date that dictates which period of employment is assigned initial responsibility for the treatment." *Id.* at 213.

In *Tapp*, the issue reduced to the question whether the events in 1991 regarding the claimant's left wrist constituted "medical treatment" for purposes of the LIER. On that point, we noted that the date of the first medical treatment has alternately been identified as the date the claimant either first *seeks* treatment or first *receives* treatment. *See SAIF v. Kelly*, 130 Or App 185, 188, 880 P2d 970 (1994); *Timm v. Maley*, 125 Or App 396, 401, 865 P2d 1315 (1993), *rev den* 319 Or 81 (1994). The objective in designating that date is to identify the point when the condition generally becomes a disability. *Tapp*, 169 Or App at 212-13. Given that objective, we reasoned:

> "Because both the date that a claimant first *seeks* medical treatment and the date that the claimant first *receives* treatment generally have an objective relationship to when the claimant's condition becomes a disability, we believe that it is appropriate to designate a triggering date based on either event, whichever occurs first."

*Id.* at 213 (emphasis in original).

Applying that rule, we explained that on the facts in *Tapp*—where "a claimant does not seek treatment for a condition, and the symptoms are simply noted incidentally as

part of an examination for another condition, but are not diagnosed or treated in any other way—the date of the medical examination generally would not have a sufficient objective relationship to the date of disability to make it an appropriate triggering date." *Id.* at 214-15. Put another way, the question that the doctor asked the claimant in *Tapp* about pain in his wrists and the claimant's response were unrelated, by any objective standard, to the problem (headaches and eye pain) for which the claimant had sought treatment. We accordingly held that the claimant had not sought treatment for his left wrist condition in 1991 and that the triggering date for that condition did not occur until 1997. *Id.*

■    Under our analysis in *Tapp*, the only question in determining the triggering date is one of fact—when the claimant first sought or received treatment. Once the Board determines when that event occurred, it can assign responsibility under the LIER. *Tapp* does not require the Board to decide when a claimant first sought or received treatment and then decide, as a matter of policy, whether that event also has a "sufficient objective relationship" to the date of disability to make it an appropriate triggering date for the LIER. Rather, once the Board determines the date the claimant first sought or received treatment, its inquiry under *Tapp* is complete.

In this case, the question of responsibility turns on whether claimant first sought treatment for her thumb condition while Farmers was on the risk. In deciding that question, the Board recognized that claimant had described her thumb condition to Van Allen before 1998 and that, at that time, he had "considered claimant's thumb condition mild enough to resolve on its own, without treatment, incident to claimant being off work for carpal tunnel releases." The Board then explained:

> "Under these circumstances, even though claimant described her thumb problem to Dr. Van Allen at various times before February 16, 1998, we do not consider that event to be of a sufficient objective relationship to the date of disability to make it an appropriate triggering date for the assignment of initial responsibility under the LIER."

The Board's order can be understood in one of two ways. Because the Board recites that claimant described her thumb condition to Van Allen and that he recognized it as a separate condition before February 1998, the Board may have found that claimant in fact sought treatment for her trigger thumb condition before February 1998 but nonetheless made a policy judgment that, in light of Van Allen's response, that event lacked "a sufficient objective relationship to the date of disability to make it an appropriate triggering date."[5] If that is what the Board did, it misperceived our holding in *Tapp*. As explained above, *Tapp* requires a finding of fact as to when the claimant first sought or received treatment, nothing more.

■ Alternatively, the Board may have been saying that claimant did not in fact seek treatment for her trigger thumb condition until February 1998. If that was its intent, we cannot say that its factual finding would not be supported by substantial evidence.[6] We cannot tell, however, from the Board's reasoning which course it took. We accordingly reverse the Board's order and remand to permit it to clarify the basis for its decision. *See Labor Force v. Frierson*, 169 Or App 573, 578, 9 P3d 128 (2000); *SAIF v. Brown*, 159 Or App 440, 445-46, 978 P3d 407 (1999).

Reversed and remanded for reconsideration.

---

[5] An earlier portion of the Board's opinion supports that interpretation of its reasoning. The Board had explained:

"Because the purpose in designating a triggering date is to identify a point when a condition generally becomes a disability, the *Tapp* court has determined that the event (seeking or receiving medical treatment) used to establish the triggering date must have a sufficient objective relationship to the date of disability to make it an appropriate triggering date for assignment of initial responsibility under the LIER."

In stating the test that way, the Board appears to be saying that, even though there is an event (seeking or receiving treatment) that would ordinarily trigger responsibility under the LIER, the event must also have "a sufficient objective relationship to the date of disability" to do so.

[6] We have considered and reject without discussion Farmers' argument that the record is insufficient to support a finding that claimant first sought treatment for her trigger finger condition while it was on the risk.