Argued and submitted April 5, affirmed on petition; reversed and remanded on cross-petition September 6, 2006

In the Matter of the Compensation of
Kevin D. Cierniak, Claimant.

PORT OF PORTLAND OCIP
and Argonaut Insurance Company,
*Petitioners - Cross-Respondents,*

*v.*

Kevin D. CIERNIAK,
*Respondent - Cross-Petitioner,*

*and*

SAIF CORPORATION
and Columbia Acoustical, Inc.;
and SAIF Corporation and the Harver Company,
*Respondents - Cross-Respondents.*

03-00246, 02-03587, 02-03064; A126142

142 P3d 542

Jerald P. Keene argued the cause and filed the briefs for petitioners - cross-respondents.

James W. Moller argued the cause and filed the briefs for respondent - cross-petitioner.

Before Schuman, Presiding Judge, and Landau* and Ortega, Judges.

SCHUMAN, P. J.

* Landau, J., *vice* Ceniceros, S. J.

## SCHUMAN, P. J.

After working as a carpenter for various employers for more than 25 years, claimant filed a claim for workers' compensation benefits based on bilateral carpal tunnel syndrome (CTS). The compensability of his condition is not at issue on review; rather, his various employers (and their insurers) disagree among themselves about which employer bears responsibility. The Workers' Compensation Board (board), invoking the last injurious exposure rule, assigned responsibility for claimant's left-side CTS to his most recent employer, the Port of Portland Owner Controlled Insurance Program (Port of Portland, petitioner), and its insurer, Argonaut Insurance Company.[1] Port of Portland seeks judicial review, asserting that the board erred in its assignment of responsibility. We affirm. The board also found that claimant's right-hand CTS was not caused in major part by employment subsequent to 1991, the year when claimant's then-employer, Columbia Acoustical (Columbia) and its insurer SAIF had accepted his claim for that disability; the board therefore assigned responsibility for the right-hand CTS to Columbia. On cross-petition, claimant assigns error to that determination. We reverse and remand on that assignment of error. He also assigns error to the board's determination that his fee award was governed by ORS 656.308(2)(d), which imposes a $1,000 limit, instead of ORS 656.307(5), under which he claims entitlement to $1,500. Because we remand for redetermination of the substantive basis for that attorney fee award, the award might or might not remain in effect, so we do not reach that assignment of error.

Claimant, a 49-year-old man, has spent over half of his life as a carpenter specializing in ceiling installation. In 1991, he sought treatment for CTS symptoms in his right and

---

[1] Where appropriate, our reference to an employer includes reference to its insurer as well. The three employers/insurers who dispute responsibility, with the approximate dates of their employment of claimant, are: Columbia Acoustical/ SAIF, through 1991; The Harver Company/SAIF, May 2000 through October 2001; and Port of Portland/Argonaut, November 2001 through January 2002. Several employers from 1991 to 2000 were dismissed by stipulation. In some parts of the record, Port of Portland is referred to by the name of one of its member companies, Western Partition.

left wrists. He was diagnosed with (1) denervation on the left side, a precursor to left-side CTS, and (2) right-side CTS. He filed an occupational disease claim for right-side CTS only. His employer at the time, Columbia, issued a notice of acceptance. His claim was closed.

Claimant again sought CTS treatment in 2001 while he was employed by The Harver Company (Harver). He underwent nerve conduction tests, was diagnosed with bilateral CTS, and was advised that he required surgery on both wrists. Shortly thereafter, he went to work for Port of Portland for three months, after which he received the recommended surgery.

■ ■ On review, the issue is whether responsibility for claimant's left-side CTS was properly attributed to Port of Portland, claimant's most recent employer. The administrative law judge (ALJ) and the board both used the last injurious exposure rule (LIER) to resolve the issue. Under that rule, liability is presumptively assigned to the most recent potentially causal employer for which a claimant worked or was working at the time the claimant became disabled or first sought or received medical treatment, whichever comes first. *Bracke v. Baza'r*, 293 Or 239, 248, 646 P2d 1330 (1982). In this case, Harver, which employed claimant when he underwent the nerve conduction tests, invoked the LIER defensively to shift responsibility forward to claimant's subsequent employer, Port of Portland.

■ In order to succeed, Harver was required to show that working conditions at Port of Portland "independently contributed" to claimant's left-side CTS. As this court has explained,

> "a necessary factual predicate for the defensive use of the rule of responsibility is proof that the subsequent employment actually contributed to the worsening of an underlying disease. In other words, the employer must prove that the subsequent employment independently contributed to the injury before the rule of responsibility can be invoked defensively."

*SAIF v. Hoffman*, 193 Or App 750, 753, 91 P3d 812 (2004) (internal citations and quotation marks omitted). "[A]n employer can succeed in shifting responsibility to a later

employer only by adducing proof linking the subsequent employment to the disability, that is, proof that the later employment made an independent contribution to the disability." *Id.* at 754 (internal quotation marks omitted). The board concluded that Harver met that burden: it found that working conditions at Port of Portland during the last three months of claimant's 25-year carpentry career independently contributed to claimant's left-side CTS condition.

██ On review, Port of Portland argues that the board's finding is not supported by substantial evidence because the two experts who opined on the question, Drs. Buehler and Button, disclaimed any medical foundation for their conclusion that claimant's work activities at Port of Portland contributed to his left-side CTS. Port of Portland points to the experts' reliance on the assumption that a linear relationship exists between the amount of time a person is exposed to work conditions that cause CTS and the development of the condition. In other words, the experts assumed that exposure to the carpentry tasks at Port of Portland, even if brief, contributed to claimant's left-side CTS because with each exposure to causative hand maneuvers, contribution to the CTS continues. According to Port of Portland, that assumption is not a "fact," and because the doctors acknowledged that they based their conclusions on that assumption, there is no adequate foundation for the conclusion that work conditions at Port of Portland independently contributed to claimant's left-side CTS.

"[S]ubstantial evidence supports a finding when the record, viewed as a whole, would permit a reasonable person to make the finding." *Garcia v. Boise Cascade Corp.*, 309 Or 292, 295, 787 P2d 884 (1990); ORS 183.482(8)(c). "If a finding is reasonable in light of countervailing as well as supporting evidence, the finding is supported by substantial evidence." *Garcia*, 309 Or at 295. In this case, the record provides substantial evidence for the board's conclusion that working conditions at Port of Portland independently contributed to claimant's left-side CTS.

The record discloses that the type of work claimant performed at Port of Portland, ceiling installation, involved wire wrapping, which "bothered him" and caused his CTS

symptoms to flare. Both doctors concluded that those working conditions contributed independently to claimant's left-side CTS. In each case, the doctor's opinion was informed by (1) the medical evidence of claimant's progressive condition, (2) his working conditions at Port of Portland, and (3) the assumption that exposure to the type of work that gives rise to a person's CTS contributes to that person's CTS. We do not agree with Port of Portland that the conclusions lack medical foundation. Rather, the evidence shows with reasonable certainty that there is a causal connection, albeit small, between the claimant's work at Port of Portland and the left-side CTS. *See Mandell v. SAIF*, 41 Or App 253, 256, 597 P2d 1281 (1979) (causality should be expressed in terms of reasonable medical probability).

At the request of SAIF (as insurer for Harver), Button performed an independent medical examination (IME) on claimant on March 11, 2002, six weeks after claimant's employment with Port of Portland ended. Button diagnosed claimant with "[l]ongstanding bilateral carpal tunnel syndromes—progressive." He reviewed the history of claimant's initial CTS treatment in 1991 and explained, "Subsequently, his condition has worsened bilaterally[.]" In response to questions from SAIF's claims adjuster, Button wrote, "There has been a gradual symptomatic and pathologic worsening of his bilateral carpal tunnel syndromes since he was evaluated in 1991. * * * [T]he condition on the left is now categorized as moderately severe. Therefore, there has been very substantial advancement on the left side *over the last decade*." (Emphasis added.) Button summarized, "I would view *his overall construction activities as a carpenter* as having contributed to a symptomatic and pathologic advancement of the underlying condition," and "*his overall work activities in this field are a major contributing element in the causative equation* * * *." (Emphasis added.)

Turning to claimant's employment with Port of Portland, Button explained:

> "6. After leaving [Harver], [claimant] was hired by [Port of Portland] working on a project at the Portland Airport and remained with them for two months. The requirements were installing ceiling systems. He stated this was

much lighter work. Nevertheless, when performing various maneuvers, especially wrapping the wires with continual pinch and rotation with the thumb and fingers, his symptoms flared. * * *

"7.   Overall, I would view his work activities in carpentry and construction as being the major contributing cause of the advancement of a preexisting condition that is worsening. *The most recent exposure with [Port of Portland] for a two-month period of time was only a minor contributing factor symptomatically and perhaps pathologically.*"

(Emphasis added.)

Two weeks later, SAIF's claims adjuster presented Button with a check-the-box letter designed to confirm his earlier conclusions in the IME report concerning whether employment conditions at Port of Portland contributed independently to claimant's left-side CTS. The adjuster asked:

"Is it your medical opinion that to a medically reasonable probability, all of his ongoing work exposure, *regardless of the time he has spent or spends with any given employer, continues to contribute to the symptomatic and pathological progression of the disease process.* You did feel that the shorter the time he is with an employer, the less that particular employer contributes, but that *all of his work has had at least some level of contribution to the worsening of his pathology.*"

(Emphasis added.) Button checked the box marked, "Yes, I agree."

A second expert, Dr. Buehler, was deposed in advance of the hearing. An attorney for claimant asked whether he agreed with Button's response to the check-the-box question quoted above. Buehler responded in the following colloquy:

"A. [Buehler:]   I mean, that's—you know, it's—it's so hard to—I mean, we are all assuming a linear relationship between time and development of symptoms, but I'm sure the degree of work has a factor in the development of carpal tunnel, too, but we can't measure that so we all rely on exposure, time exposure—

"Q. [counsel:]   Okay. And—

"A. [Buehler:]   —because to do anything more complex is very difficult.

"Q. [counsel:]   So in terms of reasonable medical probability, do you agree with the statement of Dr. Button—

"A. [Buehler:]   Yeah.

"Q. [counsel:]   —made there?

"A. [Buehler:]   I mean, it's the only way you can deal with it.

"* * * * *

"Q. [counsel:]   So that continued work [after 2001 nerve conduction studies] continued to contribute to the condition then?

"A. [Buehler:]   *Oh, I'm sure it did to some degree. I don't think very significantly, but I'm sure.*

"Q. [counsel:]   Okay."

(Emphasis added.) On re-cross, Buehler acknowledged that the record disclosed no "clinical medical evidence," which Buehler apparently understood to mean diagnostic test results such as nerve conduction studies, to show that claimant's condition worsened after working at Port of Portland. Buehler was pressed about whether, notwithstanding the lack of "clinical" evidence, claimant's work after 2001 contributed to his left-side CTS. Buehler again stated, "I'm sure that there is some contribution" and added, "the nature of which is—would be severely speculative."

After evaluating each doctor's report, the ALJ found:

"Both doctors appear to agree that claimant had evidence of bilateral carpal tunnel syndrome in 1991 and that the bilateral carpal tunnel syndrome pathologically worsened between 1991 and 2001. Both doctors agree that there is no objective evidence of a pathological worsening following the August 17, 2001 nerve conduction velocity studies. *However, both doctors agree that claimant's continued employment up until the dates of surgery contributed to some small degree to the worsening of his bilateral carpal tunnel syndrome condition.*

"* * * * *

> "* * * The record is clear * * * that claimant's *subsequent employment up until the date of his left carpal tunnel surgery* independently contributed to the cause or worsening of his left carpal tunnel syndrome condition."

(Emphasis added.) The board adopted the ALJ's findings.

Substantial evidence supports those findings. Medical evidence from two physicians established that the work conditions at Port of Portland contributed to claimant's left-side CTS. Buehler stated, "I'm sure [employment at Port of Portland] contributed to some degree," and Button stated that the same work, even if brief, contributed to the worsening of claimant's underlying condition. Buehler's qualifying statement that "the nature of" the contribution to claimant's left-side CTS that occurred while claimant was employed by Port of Portland "would be severely speculative" does not contradict Buehler's conclusion that that employment contributed in some degree to claimant's CTS. Rather than disclaiming his own words, Buehler's comment clarified that pinpointing the significance of the contribution—which, in his opinion, existed to a medical probability—would require guesswork because claimant did not undergo clinical tests from that period. The ALJ and board noted claimant's reported pain and working conditions during the short period while claimant worked at Port of Portland (as well as the lack of additional nerve conduction tests), accepted the linear relationship assumption, and found those opinions persuasive concerning Port of Portland's contribution to claimant's left-side CTS condition. We cannot conclude otherwise.

Port of Portland also argues that Buehler's statement that the linear relationship assumption is "not worth much," made in the context of testimony concerning claimant's right-side CTS, undermines the value of his conclusions concerning claimant's left-side condition. That statement does not contradict any of Buehler's other opinions. To the extent that Buehler's candor affects the value or persuasiveness of his medical analysis, it is up to the ALJ (and board) to weigh that effect in the factfinding process. The ALJ did so, accepting the linear relationship assumption and concluding that claimant's employment at Port of Portland contributed in "some small degree to the worsening of his bilateral carpal

tunnel syndrome condition." The board accepted that finding, and on review, we conclude that substantial evidence supports it.

■■ On cross-petition, claimant argues that a finding of the board concerning responsibility for claimant's right-side CTS lacks substantial evidence, and that the board's ultimate conclusion concerning responsibility for that condition lacks substantial reason. Unlike claimant's left-side CTS claim, claimant's claim for right-side CTS was accepted 10 years earlier: As noted above, SAIF, as insurer for Columbia, had accepted claimant's claim for right-side CTS in 1991. Thus, at the 2001 hearing, responsibility for claimant's right-side CTS was not decided under the LIER, which applies only to claims that, at the time of hearing, have not been accepted by any employer, but under ORS 656.802(2)(b), which applies when a claimant's claim has been accepted by one employer and the claim worsens under a subsequent one. ORS 656.802(2)(b) provides:

> "If the occupational disease claim is based on the worsening of a preexisting disease or condition pursuant to ORS 656.005(7), the worker must prove that employment conditions were the major contributing cause of the combined condition and pathological worsening of the disease."

Columbia attempted to shift responsibility to a later employer under ORS 656.802. To succeed, Columbia had to establish that employment conditions subsequent to claimant's 1991 employment were the major contributing cause of the combined condition and pathological worsening of the disease.

The ALJ determined that Columbia did not satisfy that burden and therefore remained responsible. The ALJ explained, "There is no medical opinion in the record that concludes that claimant's post-1991 employment is the major contributing cause of his combined [right-side] carpal tunnel syndrome condition." The ALJ further explained that both Buehler and Button opined that "contribution should be allocated based on the 15 years of work exposure prior to 1991 compared to the 10 years of work exposure after that date.

Since 15 is greater than 10, both doctors agree that the pre-1991 employment is the major contributing cause of the combined condition." The board adopted the ALJ's findings and conclusion.

Claimant points out that the challenged finding— "[t]here is no medical opinion in the record that concludes that claimant's post-1991 employment is the major contributing cause of his combined [right-side] carpal tunnel syndrome"—fails to acknowledge contradictory evidence contained in one of Button's responses to a SAIF claims adjuster's question. The adjuster asked Button to respond to the following statement: "Although his right wrist condition in 1991 was very significant, and in your opinion he should have had surgery at that time, you feel the major cause of both the worsening since 1991 *and the total condition at this time*, is his work activities since 1991." (Emphasis added.) Button checked the box marked, "Yes, I agree."

We agree that Button's bare response contradicts the contested finding. If, as Button agreed, claimant's "work activities since 1991" were "the major cause" of the worsening and claimant's "total condition," then at least one medical opinion exists "that concludes that claimant's post-1991 employment is the major contributing cause of his combined [right-side] carpal tunnel syndrome condition."

Cross-respondent Harver argues that we should disregard that contradiction because, in its view, substantial evidence supports the board's ultimate conclusion that responsibility remained with Columbia. We decline to do so. Because the board left the inconsistency unaddressed, we cannot determine whether the board's ultimate finding was valid.

We considered a similar situation in *SAIF v. January*, 166 Or App 620, 998 P2d 1286 (2000). The question in that case was whether the claimant established that increased back pain constituted "actual worsening" of his lumbar strain condition for purposes of proving his aggravation claim under ORS 656.273(1). The medical experts disagreed about whether the claimant's lumbar strain had worsened. One examiner, Kelly, provided inconsistent opinions on

the matter in two check-the-box letters. She first affirmatively responded in a check-the-box form that the claimant's increased pain "represent[ed] a worsening, although perhaps only a temporary worsening" of the lumbar strain. *January*, 166 Or App at 623. Later, she affirmatively responded that the claimant underwent "a temporary and acute waxing and waning of symptoms" and that her care "stabilize[d] the waxing and waning." *Id.* at 625. The board relied on Kelly's first opinion and found that claimant suffered an aggravation of his lumbar strain. *Id.* at 623. The petitioner challenged the determination, arguing that Kelly's earlier answer, which indicated that the claimant instead experienced an actual worsening of the underlying condition, contradicted her later answer, which instead described the claimant's condition as a flare-up of symptoms. *Id.* at 625.

We observed that each opinion carried legal significance different from the other. The earlier opinion could substantiate the "actual worsening" requirement for an aggravation claim under ORS 656.273(1), while the later opinion would instead substantiate only a claim for "curative care" under ORS 656.245(1)(c)(L) to stabilize the claimant's symptoms. *Id.* at 625. We explained that we lack authority to resolve the matter by determining which, if any, of the opinions is more persuasive, even if the inconsistencies might be easily resolved. Rather, the role of the court is limited to evaluating whether the board's finding is supported by substantial evidence, and, where the board fails to address inconsistencies in the evidence, we cannot accomplish that task. We reasoned:

> "Such inconsistencies may be explained by confusion, or the inconsistency may not exist when the circumstances are better understood. Likewise, given how records are developed in workers' compensation cases, apparent contradictions and inconsistencies sometimes may be due to the leading written questions posed to the experts, coupled with the experts' limited opportunities to clarify their answers.

> "Our role on review is to evaluate whether the Board's decision is supported by substantial evidence, which means evidence that, in viewing the record as a whole, would permit a reasonable person to make a finding. In addition to the requirement that findings be supported by substantial

evidence, the Board must provide a sufficient explanation to allow a reviewing court to examine the agency's action. The problem here is that the Board did not acknowledge the existence of [the doctor's] subsequent opinion [and] it did not reconcile [the] two opinions[.] * * * To be sure, whether [the] two opinions are fatally inconsistent is for the Board to consider and decide. But for us to meaningfully review the Board's reliance on Kelly's 'actual worsening' opinion, the Board must explain its reasons for relying on it notwithstanding Kelly's subsequent 'waxing and waning' opinion."

*Id.* at 625-26 (internal quotation marks and citations omitted).

In this case, for the reasons set forth in *January*, we cannot evaluate whether the board's determination that Columbia remains responsible for claimant's right-side CTS is supported by substantial reason. When the board explained that Columbia was responsible because the record contained "*no* medical opinion" to support the proposition that employment after Columbia was the major contributing cause of his right-side CTS, the board failed to address Button's check-the-box answer indicating that "the major cause of both the worsening since 1991 *and the total condition at this time*, is [claimant's] work activities since 1991." (Emphasis added.) We reverse and remand for reconsideration on claimant's cross-petition.

Claimant also argues on cross-petition that the board erred in awarding attorney fees against Columbia under ORS 656.308, rather than ORS 656.307. Although both statutes address claimant's entitlement to fees in responsibility proceedings, ORS 656.308(1)(d) limits the claimant's entitlement under that section to "$1,000 absent a showing of extraordinary circumstances," but ORS 656.307 permits any award of "reasonable" attorney fees where otherwise permitted by that section. Because we reverse and remand on the issue of Columbia's responsibility for claimant's right-side CTS, our disposition does not require us to address whether the board erred in awarding attorney fees under ORS 656.308.

Affirmed on petition; reversed and remanded on cross-petition.