Argued and submitted March 2, affirmed June 29, 2011

In the Matter of the Compensation of
Zane D. Smith, Claimant.

JH KELLY, LLC;
and ACIG,
*Petitioners,*

*v.*

Zane D. SMITH;
Rockford Corp;
Cambridge - Xchanging;
Loy Clark Pipeline;
and Liberty Northwest Insurance Corporation, Inc.,
*Respondents.*

Workers' Compensation Board
0702027, 0607776, 0603159;
A144385

260 P3d 583

Deborah L. Sather argued the cause for petitioners. With her on the briefs were Rebecca A. Watkins and Sather, Byerly & Holloway LLP.

Philip Emerson argued the cause and filed the brief for respondent Zane D. Smith.

Benjamin C. Debney argued the cause and filed the brief for respondents Rockford Corp. and Cambridge - Xchanging.

David O. Wilson argued the cause and filed the brief for respondents Loy Clark Pipeline and Liberty Northwest Insurance Corporation, Inc.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

ROSENBLUM, S. J.

**ROSENBLUM, S. J.**

JH Kelly, LLC, and ACIG (JH Kelly) seek review of an order of the Workers' Compensation Board determining that it, among several different employers, is responsible for claimant's compensable carpal tunnel syndrome. We conclude that the board did not err and affirm.

Claimant had worked for various employers as a welder and pipefitter for 27 years when he sought treatment in February 2006 for symptoms that were eventually diagnosed as bilateral carpal tunnel syndrome. He filed a workers' compensation claim with his most recent previous employer, Loy Clark, for whom he had worked from August to September 2005. (Thereafter, he was off work for five months.) Beginning on March 21, 2006, claimant started working again and worked for Rockford Corporation for one month. After a month off, he worked for Loy Clark again for one month. On June 26, 2006, claimant went to work for JH Kelly. He worked there for six months, after which time he had surgery for his carpal tunnel syndrome.

It is undisputed that claimant's carpal tunnel syndrome is compensable, and that Loy Clark, as claimant's most recent potentially causal employer at the time claimant sought treatment for carpal tunnel syndrome, was presumptively responsible under the last injurious exposure rule. *Bracke v. Baza'r*, 293 Or 239, 248, 646 P2d 1330 (1982) (Liability is presumptively assigned to the most recent potentially causal employer at the time the claimant became disabled or first sought or received treatment, whichever came first.). Loy Clark attempted to shift responsibility to one of claimant's subsequent employers, Rockford or JH Kelly, asserting that they actually contributed to the worsening of claimant's condition. *See SAIF v. Hoffman*, 193 Or App 750, 753, 91 P3d 812 (2004) (A necessary factual predicate for the defensive use of the rule of responsibility is proof that the subsequent employment actually contributed to the worsening of an underlying disease.). The administrative law judge (ALJ) held that JH Kelly, as the last employment that actually contributed to claimant's condition, was responsible.

The board, in adopting and affirming the order of the ALJ, described the law concerning the application of the last injurious exposure rule under these circumstances:

"Where, as here, there is a dispute concerning responsibility among several employers, it is well settled that the last injurious exposure rule ('LIER') governs the assignment of responsibility. Under the LIER, initial or presumptive responsibility for the disease is assigned to the insurer during the last period of employment when conditions could have contributed to the claimant's disability. *AIG Claim Services v. Rios*, 215 Or App 615, 619, [170 P3d 1110] (2007). * * *

"* * * * *

"Liability is shifted from the presumptively responsible employer to a subsequent employer if claimant's later employment actually contributed to a worsening of the condition. *Reynolds Metals v. Rogers*, 157 Or App 147, 153, [967 P2d 1251] (1998), *rev den*, 328 Or 365 (1999); *Mark A. Okesson*, 58 Van Natta 1520, 1522 (2006). However, in order to shift responsibility to a subsequent employer, the injured worker must suffer a worsening of the condition; a mere increase in the symptoms is not sufficient."

In a footnote in its opinion, the board reiterated that, in order to shift responsibility to a subsequent employer, the presumptively responsible carrier must establish that "the later employment actually contributed to a worsening of the condition." Even a slight contribution to the worsening of a condition is sufficient to shift responsibility to a subsequent employer. *See Port of Portland OCIP v. Cierniak*, 207 Or App 571, 577, 142 P3d 542 (2006).

In adopting the ALJ's order, the board made the following ultimate findings and conclusions determining that responsibility had shifted to JH Kelly:

"To the extent medical opinions were offered, all agree that all of claimant's work, including his work for JH Kelly, contributed in some small degree to his carpal tunnel syndrome. While the language used in the various opinions is qualified with words like 'significant,' 'material,' 'pathological,' 'affirmative evidence' and 'objective worsening,' the preponderance of the medical evidence establishes that

claimant's work for JH Kelly contributed at least to a minor degree."

JH Kelly does not dispute that the board recited the correct legal standard for shifting responsibility. JH Kelly contends in its first assignment of error, however, that the board did not actually *apply* the correct standard, because it failed to require proof of an actual, identifiable, measurable contribution by JH Kelly and relied instead on medical evidence that did not meet that standard because it only supported a theoretical contribution. The gist of JH Kelly's argument is that there was no evidence from which the board could find that claimant's JH Kelly employment actually contributed to a worsening of the carpal tunnel syndrome.

In our view, JH Kelly's first assignment presents a variation of the substantial evidence/substantial reason argument that JH Kelly makes in its second assignment of error: that the board's findings are not supported by substantial evidence, because the record contains no evidence in support of a finding of actual contribution by JH Kelly. Accordingly, we discuss the two assignments together and review the record to determine whether the medical evidence supports the board's findings. It clearly does.

Dr. Verheyden, who first diagnosed claimant's carpal tunnel syndrome and performed surgery on claimant's hand, concluded that claimant's condition was caused by his 30 years of employment. When asked to explain the contribution of claimant's employment with JH Kelly, he testified by deposition:

"[E]ach one of these employers, working in and of themselves for a month or two, probably did not cause any *significant pathologic worsening*. However, summed all together, each one probably contributed a slight degree.

"[I]n reality, every employer that he worked for has probably *contributed to some slight degree to the pathologic worsening*."

(Emphasis added.) Verheyden testified that with each work exposure, "to a minor degree * * * the disease continues to march on," even though the change may not be measureable by nerve conduction studies.

Dr. Bell, who examined claimant on employer's behalf, stated in a letter that "all of [claimant's] work activities likely contributed to a minor degree to his underlying condition." Dr. Staver, who had conducted the examination with Bell, concurred in Bell's opinion. Thus, at least three physicians were of the opinion that claimant's employment at JH Kelly contributed to a slight or minor degree to claimant's underlying condition. Because no nerve conduction studies had been performed after claimant's work at JH Kelly, the doctors were not able to objectively quantify the extent of the contribution by JH Kelly or to state that the contribution at JH Kelly was "significant." However, that was not required in order to shift responsibility to JH Kelly. A minor or slight contribution to the underlying condition is sufficient to shift responsibility to a subsequent employer under the last injurious exposure rule. *Cierniak*, 207 Or App at 578-80; *see also SAIF v. Henwood*, 176 Or App 432, 435, 31 P3d 1096 (2001) ("slight" contribution due to subsequent employment held sufficient to shift responsibility under last injurious exposure rule).

Employer points out certain inconsistencies in the medical evidence. For example, when asked what evidence there was that claimant's work at JH Kelly independently contributed to a worsening of the carpal tunnel syndrome, Bell testified, "I don't know if there is specific evidence that it contributed." It is clear from the context of her testimony that Bell was referring to the lack of objective test results. She nonetheless stated several times that all of claimant's work activities contributed to the underlying condition to a minor degree.

In that respect, this case is similar to *Cierniak*. There, as here, the claimant had worked for multiple employers over many years. After having been diagnosed with carpal tunnel syndrome, for which surgery was recommended, the claimant went to work for Port of Portland and had surgery after that employment. The question on review was whether the board had erred in assigning responsibility to the Port under the last injurious exposure rule after determining that the claimant's three months of work with the Port had contributed independently to his condition. The medical experts who had attributed a contribution by the

Port had "disclaimed any medical foundation for their conclusion," and said that the nature of the contribution would be "severely speculative." *Cierniak*, 207 Or App at 579. The experts had reasoned, however, that the claimant's exposure at the Port had contributed because, despite the absence of nerve conduction studies objectively identifying a worsening, it was possible for the doctors to conclude that, with each exposure to causative hand maneuvers, contribution to the carpal tunnel syndrome continues. *Id.* at 576-79. The Port asserted that the board's order was not supported by substantial evidence. We held that substantial evidence supported the board's finding that claimant's employment with the Port contributed independently to the worsening of his carpal tunnel syndrome:

> "Medical evidence from two physicians established that the work conditions at Port of Portland contributed to claimant's left-side CTS. Buehler stated, 'I'm sure [employment at Port of Portland] contributed to some degree,' and Button stated that the same work, even if brief, contributed to the worsening of claimant's underlying condition. Buehler's qualifying statement that 'the nature of' the contribution to claimant's left-side CTS that occurred while claimant was employed by Port of Portland 'would be severely speculative' does not contradict Buehler's conclusion that that employment contributed in some degree to claimant's CTS. Rather than disclaiming his own words, Buehler's comment clarified that pinpointing the significance of the contribution—which, in his opinion, existed to a medical probability—would require guesswork because claimant did not undergo clinical tests from that period. The ALJ and board noted claimant's reported pain and working conditions during the short period while claimant worked at Port of Portland (as well as the lack of additional nerve conduction tests), accepted the linear relationship assumption, and found those opinions persuasive concerning Port of Portland's contribution to claimant's left-side CTS condition. We cannot conclude otherwise."

*Id.* at 580. We reach the same conclusion here, where the evidence is quite similar. The board's finding that claimant's employment at JH Kelly contributed slightly to the worsening of the underlying carpal tunnel syndrome is supported by substantial evidence, and for that reason, the board did not

err in assigning responsibility for claimant's condition to JH Kelly.

Affirmed.