Argued and submitted September 28, 2018, affirmed April 29, petition for review denied August 27, 2020 (366 Or 826)

In the Matter of the Compensation of
William H. Lodge, Claimant.

NAES CORPORATION,
*Petitioner,*

*v.*

SCI 3.2, INC.
and William H. Lodge,
*Respondents.*

Workers' Compensation Board
1504600, 1502155; A165158

465 P3d 246

Employer, NAES Corporation, seeks judicial review of an order of the Workers' Compensation Board holding it responsible for claimant's hearing loss instead of claimant's most recent employer, SCI 3.2, Inc., under the last injurious exposure rule (LIER). NAES argues that, because the testifying experts allowed for the possibility that claimant's work at SCI contributed to his hearing loss, the board erred in shifting responsibility for claimant's occupational disease from SCI to NAES under the LIER. NAES also argues that the board's decision was not supported by substantial evidence or reason. SCI responds that the board properly applied the LIER in its order and that its decision was supported by substantial evidence and reason. *Held*: The board did not err. The board correctly applied the LIER and substantial evidence and reason supported its conclusion that claimant's employment prior to SCI was the sole cause of claimant's hearing loss.

Affirmed.

Rebecca A. Watkins argued the cause for petitioner. Also on the briefs was Sather, Byerly & Holloway, LLP.

Trisha D. Hole argued the cause and filed the brief for respondent SCI 3.2, Inc.

No appearance for respondent William H. Lodge.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Aoyagi, Judge.*

DeHOOG, P. J.

Affirmed.

_____
* Egan, C. J., *vice* Hadlock, J. pro tempore.

**DeHOOG, P. J.**

Petitioner, employer NAES Corporation (NAES), seeks judicial review of an order of the Workers' Compensation Board holding it responsible for claimant's hearing loss under the last injurious exposure rule (LIER). In its first assignment of error, NAES contends that the board erred in concluding that claimant's most recent employer, respondent SCI 3.2, Inc. (SCI), had successfully shifted responsibility for claimant's occupational disease to NAES by proving, to a reasonable medical probability, that claimant's prior employment was the sole cause of his hearing loss.[1] NAES argues that the board applied the incorrect standard of proof and that, because it was at least possible that claimant's work for SCI contributed to his hearing loss, the board erred in concluding that his prior employment had been the sole cause of that occupational disease. In its remaining two assignments of error, NAES argues that the record lacks substantial evidence and reason to support the board's findings that (1) it was impossible for claimant's work for SCI to have contributed to his hearing loss; and (2) claimant's prior employment was the sole cause of that condition. SCI responds that the board applied the correct standard of proof under the LIER and that substantial evidence in the record supports that decision. Reviewing for legal error and substantial evidence, we conclude that the board did not err; accordingly, we affirm.

We summarize the facts as found by the board, noting those disputed by NAES. ORS 656.298(7).[2] Claimant, William Lodge, worked as a boilermaker for various employers beginning in 1966, and, at the time he retired from that profession in 2012, claimant had been working for NAES. Following his retirement, claimant began working seasonally

---

[1] Claimant, William Lodge, is a respondent to this appeal but did not file a brief. The matter was therefore submitted on the merits as to claimant.

[2] ORS 656.298(7) states that "[t]he review [of a Workers' Compensation Board order] by the Court of Appeals shall be on the entire record forwarded by the board. Review shall be as provided in ORS 183.482(7) and (8)." In turn, ORS 183.482(7) states that "[r]eview of a contested case shall be confined to the record, and the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion." *See also King v. SAIF*, 300 Or App 267, 268, 452 P3d 1039 (2019) (unchallenged findings of historical facts "establish the facts for purposes of judicial review").

for SCI and worked in that capacity from 2013 through 2016. While employed by SCI, claimant fabricated floats for the Rose Festival Parade, at various times engaging in tasks such as sawing, welding, grinding, and hammering.

In 2014, Dr. Lipman, an ear, nose, and throat specialist, diagnosed claimant with bilateral, noise-induced hearing loss. Claimant subsequently filed an occupational disease claim for that condition with both NAES and SCI. Although neither employer disputed the compensability of claimant's condition, both employers issued denials of responsibility. Claimant later submitted to an examination by Dr. Hodgson at NAES's request. A third doctor, Wilson, reviewed claimant's medical records at SCI's request. As the board explained in its order, Lipman concluded that, to a reasonable medical probability, claimant's work as a boiler-maker had been the sole cause of his hearing loss and claimant's work for SCI had not contributed to that condition. The board further explained that, "[b]ased on certain assumptions regarding the nature of claimant's work and his use of hearing protection that were supported by claimant's testimony, Dr. Hodgson opined that it was medically probable, but not certain, that the occupational component of the hearing loss occurred before claimant began working for [SCI]." Finally, after noting Wilson's acknowledgement that he had "insufficient information to be certain," the board explained that he had nonetheless concluded that "'it was medically probable that all of the occupational exposure occurred [before claimant worked for SCI].'" NAES disputes the board's characterization of each doctor's opinion in ways that are not material to our disposition, but there is no dispute that the board relied on those medical opinions as the basis of its order.[3]

---

[3] For example, NAES argues that Hodgson "made no such statement" identifying claimant's prior employment as the sole cause of hearing loss. However, as the above summary reflects, the board did not characterize Hodgson's opinion as NAES suggests. Rather, it characterized Hodgson's opinion in a manner consistent with his statement in the record that there were only three causes of claimant's hearing loss: "In my opinion, 55 percent of his current hearing loss is due to lifelong occupational noise exposure as a Boilermaker, 35 percent is due to [age-related sources], and 10 percent is due to recreational gun use." In other words, Hodgson's opinion was that 100 percent of claimant's hearing loss was due to factors *other than* his work for SCI. The board's account of that opinion does not suggest otherwise.

The board first determined that, as the last employer that could have caused claimant's hearing loss, SCI was presumptively responsible for that condition under the LIER. However, citing *Roseburg Forest Products v. Long*, 325 Or 305, 313, 937 P2d 517 (1997), the board observed that SCI could shift responsibility for claimant's occupational disease to a prior employer if it established that "(1) it was impossible for conditions at its workplace to have caused the disease; or (2) the disease was caused solely by conditions at one or more previous employments." Ultimately, the board concluded that it was "medically probable" that claimant's work conditions at SCI had not contributed to claimant's hearing loss. But, by the same token, the board reasoned that it could not conclude that those conditions could not *possibly* have contributed to claimant's hearing loss to some degree. Accordingly, the board declined to shift responsibility to NAES under the first *Roseburg Forest Products* prong, namely, that such a causal connection was "impossible." However, reasoning that the *Roseburg Forest Products* rule permitted a presumptively responsible employer to shift responsibility to another employer in either of two, independent ways, the board concluded that SCI had effectively shifted responsibility to NAES under the second, "sole cause" prong, stating that "this record *** establishes [to] a medical probability that claimant's work prior to his [SCI] employment was the sole cause of his occupational disease." NAES now seeks judicial review of the board's decision.

NAES challenges both the board's legal conclusion that it is responsible for claimant's occupational disease claim and the factual sufficiency of the record to support that conclusion. We review the board's legal conclusions for errors of law and its factual findings for substantial evidence in the record. *SAIF v. Harrison*, 299 Or App 104, 105, 448 P3d 662 (2019) (citing ORS 183.482(8)(a), (c)). In undertaking that review, we note that the parties agree that the Supreme Court's decision in *Roseburg Forest Products* sets forth the applicable analysis under the LIER. Further, neither party disputes that claimant's hearing loss is work related and therefore compensable, nor that SCI is the employer presumptively responsible for that condition under the LIER. *See Roseburg Forest Products*, 325 Or at 309

(describing the LIER, in part, as assigning responsibility for a worker's compensable condition to the "last employer that could have caused the claimant's injury"). Our focus, therefore, is on whether SCI met its burden under the LIER, permitting it to shift responsibility for claimant's hearing loss back to NAES as claimant's previous employer. *See id.* at 313 (application of the LIER establishes "a *prima facie* case against the last employer," which may be rebutted or shifted by that employer).

On judicial review, NAES raises three assignments of error, each challenging the board's determination that SCI successfully shifted responsibility for claimant's occupational disease to NAES. However, we discuss only the merits of NAES's first and third assignments, which assert (1) that the board "applied an erroneous legal standard under [the] LIER when it focused on probability[,] not possibility[,] of contribution," and (2) that the board's determination that claimant's prior work conditions were the sole cause of his hearing loss is not supported by substantial evidence and reason.[4] We address each assignment in turn.

As we understand NAES's briefing of its first assignment of error, its argument has two, interwoven parts. First, NAES contends that the board relied on the wrong standard of proof when it determined responsibility for claimant's condition based on proof to a reasonable medical probability, because doing so "dilute[s] the *Roseburg Forest Products* standard [so as] to be one of probable contributions, not the outlined impossibility/sole cause standard." In NAES's view, a presumptively responsible employer can

---

[4] NAES's second assignment of error asserts that, "[t]o the extent the Board found SCI 3.2 [had] met the 'impossibility' standard, its decision lacked substantial evidence." The board, however, explicitly determined that "it was *not* impossible for claimant's work for [SCI] to have contributed to the occupational disease." (Emphasis added.) Further, to the extent that, as NAES suggests, that conclusion is inconsistent with the ALJ order that the board purported to adopt, the board's supplementation of that order sufficiently clarifies its conclusion that it was not impossible for SCI to have contributed to claimant's hearing loss. Thus, contrary to NAES's argument, the board's order is not inherently self-contradictory so as to raise substantial-reason concerns. *See Taylor v. SAIF*, 295 Or App 199, 203, 433 P3d 419 (2018), *rev den*, 365 Or 194 (2019) (explaining that, as implicitly required by the substantial evidence requirement of ORS 183.482(8)(c), "[o]rders of the board must be supported by substantial reason"). Accordingly, we reject NAES's second assignment of error without further discussion.

never shift responsibility to an earlier employer if there is any possibility that the claimant's work for the later-in-time employer made even a slight contribution to the claimant's occupational disease. NAES argues that, because proving that it was *probable* that claimant's work at SCI had not contributed to his hearing loss does not foreclose the *possibility* that it did, the board erred in relying on a reasonable-medical-probability standard.

However, to the extent that NAES argues that SCI was required to establish either *Roseburg Forest Products* prong by more than a reasonable medical probability, we recently reached the opposite conclusion in *Liberty Metal Fabricators v. Lynch Co.*, 295 Or App 809, 813, 435 P3d 810 (2019), *adh'd to as modified on recons*, 302 Or App 110, 456 P3d 691 (2020) (stating, in LIER case, that "evidence offered in terms of reasonable medical probability would suffice to establish that it was not possible for [the employment in question] to have caused claimant's hearing loss"); *see also id.* at 812 ("The standard of proof in this [LIER] case is a preponderance of the evidence."). Thus, the board did not err in basing its decision on evidence satisfying only a "reasonable medical probability" standard of proof.

NAES's second argument under its first assignment of error is somewhat more nuanced. NAES seemingly acknowledges that, as the board reasoned in its order, a presumptively responsible employer can shift responsibility to another employer in either of two ways. Indeed, NAES expressly states that an employer can shift responsibility by "show[ing] [that] it was impossible for its [work] conditions to have caused a worker's disease *or* that the disease was caused solely by conditions at one or more previous employments." (Emphasis added.) *See Roseburg Forest Products*, 325 Or at 313; *see also Beneficiaries of Strametz v. Spectrum Motorwerks, Inc.*, 325 Or 439, 444, 939 P2d 617 (1997) (LIER cannot impose liability on an employer whose working conditions were not the actual cause of a worker's occupational disease, even if those conditions were theoretically capable of causing the disease). Consistent with that understanding, NAES further suggests that its position is *not* that "sole cause" and "impossibility" are identical standards.

NAES proceeds to argue, however, that the two prongs of the *Roseburg Forest Products* shifting analysis are "two sides of the same standard." Citing a previous board opinion, NAES contends that, in that case, the "sole cause" prong "was not satisfied because the expert [there] allowed for the *possibility* of contribution from the presumptively-responsible employer." (Emphasis added.) In NAES's view, the board's decision in this case suffers from the same infirmity. NAES reasons that, although the board found that claimant's work conditions for NAES had been the sole cause of claimant's hearing loss, "sole cause" was not, in fact, established, because there remained at least some possibility that claimant's employment by SCI had contributed to that condition. As NAES puts it, both the "impossibility" prong and the "sole cause" prong "have an exclusionary character. Once another employment period contributes, even to a minor and unmeasurable degree, a sole cause has not been established."

The difficulty with that argument is not that, on its face, it is an entirely incorrect statement of the law.[5] We agree that, as NAES notes, there is somewhat of a "two sides of the same coin" quality to the *Roseburg Forest Products* analysis. Thus, if the evidence compelled a finding that claimant's work for SCI had some causal relationship—however slight—to his hearing loss, it would be neither impossible for that relationship to exist nor true that his work for NAES had been the sole cause of his condition. The difficulty with NAES's argument is in its application of that principle here.

The first flaw in NAES's reasoning is that it conflates actual contribution from SCI's working conditions with the mere possibility of such a contribution; only actual contribution is necessarily inconsistent with a finding that claimant's previous employment was the sole cause of his hearing loss. Because, at most, the evidence before the board left open a possibility that the working conditions at SCI

---

[5] NAES *is* incorrect, however, in its suggestion that even an "unmeasurable" contribution to claimant's hearing loss would preclude a finding that it was impossible for his employment with SCI to have had a causal connection to that condition. *See Liberty Metal Fabricators*, 295 Or App at 813 (rejecting that argument).

had contributed to claimant's condition, that inconsistency is not present here.

The second flaw in NAES's approach is that, in its challenge to the board's application of a "medical probability" standard, NAES blurs the distinction that the board correctly recognized between the two prongs of the *Roseburg Forest Products* analysis. NAES argues that the board "inappropriately watered down the impossibility and sole cause standards by focusing instead on medical probability." In essence, NAES's argument is that, so long as there is any possibility that employment with SCI caused claimant's hearing loss—a possibility ostensibly left open by the board's finding that SCI had not satisfied the "impossibility" prong—then claimant's work for NAES cannot be deemed the "sole cause" of his condition. Simply put, in NAES's view, if one cause remains possible, then another cause cannot be considered the "sole" cause.

Again finding guidance in our recent decision in *Liberty Metal Fabricators*, we reject that view. In *Liberty Metal Fabricators*, which we decided after this case was submitted, the ultimate issue was, like here, which of two employers was responsible for a claimant's hearing loss. 295 Or App at 811. Unlike here, however, the board in *Liberty Metal Fabricators* had expressly determined that the claimant's work for the presumptively responsible employer could not possibly have caused his compensable hearing loss. *Id.* at 812. As noted above, 303 Or App at 689, in that case we ultimately rejected the petitioner's contention that the board had erred in applying a "medical probability" standard to that determination. *Liberty Metal Fabricators*, 295 Or App at 813; *see also id.* at 813 n 1 (noting that the preponderance standard applies unless otherwise provided by statute in the workers' compensation framework).

After reaching that conclusion, we proceeded to consider whether, in light of an expert's testimony that it was theoretically possible that the claimant's work for his most recent employer had caused him a hearing loss too small to measure, the board had erred when it determined that the employer had satisfied the "impossibility" prong under

*Roseburg Forest Products. Id*. at 813. In concluding that the board had not erred, we explained:

> "Proof of literal impossibility is not what the case law requires. Although literal impossibility would certainly suffice to shift responsibility to a previous employer, a presumptively responsible employer may *also* shift responsibility for an occupational disease to a prior employer by showing that the disease was *caused or worsened by conditions solely* at one or more previous employments. *Roseburg Forest Products*, 325 Or at 308."

*Id*. at 813-14 (emphases added). Through that explanation, we implicitly stated what the board expressly stated in this case, namely: (1) the two prongs under the *Roseburg Forest Products* analysis provide independent bases for shifting claim responsibility; and (2) even if the evidence does not support a finding that it was impossible for a claimant's work for the presumptively responsible employer to have contributed to his or her occupational disease, that same evidence may nonetheless support the finding that the claimant's previous employment was the sole cause of that condition. Thus, as applicable here, SCI was not required to prove that conditions at its workplace could not possibly have caused claimant's hearing loss in order for it to shift responsibility for the resulting claim to NAES. Accordingly, we reject NAES's first assignment of error.

We also reject NAES's third assignment of error. NAES asserts that, even under a reasonable-medical-probability standard, neither substantial evidence nor substantial reason supports the board's determination that claimant's prior employment was the sole cause of his hearing loss. "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). "As part of our review for substantial evidence, we also review the board's order for substantial reason—that is, we determine whether the board provided a rational explanation of how its factual findings lead to the legal conclusions on which the order is based." *Harrison*, 299 Or App at 105 (internal quotation marks omitted). Under that standard, we must affirm the board's reasonable interpretation of the

medical evidence if it is supported by substantial evidence. *See Liberty Metal Fabricators*, 295 Or App at 814.

In arguing that the board's order lacks substantial evidence and reason, NAES first characterizes the board's reasoning as "difficult to determine" and rehashes its legal argument that the sole-cause prong cannot be satisfied by evidence meeting only a "reasonable medical probability" standard. Then, turning to the board's assessment of the evidence, NAES argues that (1) the board's reliance on expert opinions "allow[ing] for [the] possibility of contribution from SCI" undercuts the board's sole-cause determination, and (2) evidence of SCI's *lack* of contribution "do[es] not equate to a proof of sole cause" on the part of claimant's previous employers. In a separate but related argument, NAES points to evidence that causes other than work contributed to claimant's hearing loss and questions whether, in light of that evidence, the *Roseburg Forest Products* analysis allows for a "sole cause" finding. Finally, citing *Foster Wheeler Corp. v. Marble,* 188 Or App 579, 584, 72 P3d 645, *rev den,* 336 Or 60 (2003), NAES argues that the board's discussion of the competing evidence was inadequate, because the board did not explain how expert testimony that allowed for the possibility that claimant's employment at SCI had contributed to his hearing loss was consistent with its determination that his previous employment had been the sole cause of that condition.

We conclude that substantial evidence and reason support the board's determination that claimant's prior employment as a boilermaker, including his time with NAES, was the sole cause of his hearing loss. As noted, 303 Or App at 686, the board's order described much of the evidence that the parties had presented and explained its assessment of it. For example, the board summarized each of the three medical opinions in the record. As the board explained: (1) Lipman had concluded that "claimant's work as a boilermaker was the sole cause of claimant's hearing loss"; (2) Hodgson had concluded that "claimant's occupational noise exposure as a boilermaker was the major contributing cause, and the sole occupational cause," of his condition; and (3) Wilson, in his own terms, had concluded that

"'it was medically probable that all of the occupational expo-sure occurred prior to [claimant's] employment'" with SCI. (Brackets in the board's order.)

With respect to its determination that claimant's work for *SCI* had *not* contributed to his hearing loss, the board again pointed to that expert testimony. For exam-ple, the board noted Lipman's opinion (based, in part, on claimant's testimony at the hearing) "that claimant's work for [SCI] did not contribute to the hearing loss."[6] The board also cited Hodgson, who, having been given the same details about claimant's work and his use of hearing protection, had opined that "it is medically probable, not certain, but med-ically probable, more probable than not, that the occupa-tional component of his hearing loss occurred prior to 2013." Finally, the board cited Wilson's opinion to substantially the same effect.

In relying on those opinions for that purpose, the board acknowledged that both Hodgson and Wilson had refrained from expressing *certainty* that claimant's work for SCI had played no role in his hearing loss; accordingly, the board reasoned that SCI had not satisfied *Roseburg Forest Products* "impossibility" prong.[7] However, like the experts themselves, the board reasoned that, if claimant's work-place exposure to occasionally noisy conditions at SCI had not contributed to his hearing loss, it was more probable that his previous work conditions had been its sole cause.

In light of that evidence and the board's explana-tion of its significance in its order, we reject each of NAES's arguments in support of its third assignment of error. First,

---

[6] Among other things, claimant testified at the hearing before the ALJ that, when he worked for SCI, he would use grinding and sawing equipment as often as twice a week, but he always wore hearing protection when exposed to such loud conditions.

[7] To the extent that that decision by the board reflected an understanding that SCI had to prove the impossibility prong to a medical "certainty," as opposed to a reasonable medical probability, our decision in *Liberty Metal Fabricators* suggests otherwise. 295 Or App at 813 (explaining that the presumptively responsible employer need not prove "literal impossibility" or medical certainty to satisfy the "impossibility" prong). Here, however, neither party challenges that ruling and it is not material to our disposition; accordingly, we do not dis-cuss it further.

as explained above, the impossibility and sole-cause prongs under *Roseburg Forest Products* are independent. 303 Or App at 692. As a result, there is no inconsistency in determining that claimant's work for NAES had been the sole cause of claimant's condition despite the board's concurrent determination that SCI had not eliminated all possibility that its working conditions had contributed to his hearing loss.

Second, to the extent that NAES argues otherwise, it was appropriate for the board to consider expert testimony that claimant's work for SCI was unlikely to have contributed to his hearing loss in determining that his prior employment as a boilermaker had been its sole cause. As we understand NAES's lack-of-contribution-does-not-equal-sole-cause argument, it is that evidence related to claimant's work for SCI is relevant only to the impossibility prong, which the board determined had not been established. NAES does not persuasively explain, however, why the mere fact that evidence is relevant to prove one prong renders it *irrelevant* to prove the other prong.

In our view, evidence relevant to show that claimant's work for SCI, an otherwise potential cause of his hearing loss, was unlikely to have actually played that causal role is equally relevant to prove that something else, including claimant's work for NAES, did play that role. Even if, standing alone, that evidence might be insufficient to support the finding that claimant's previous employment had been the sole cause of his condition, there is no reason that it could not provide evidentiary support for that finding. *Cf.* OEC 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact *** more probable or less probable than it would be without the evidence").

Here, because the board had ample affirmative evidence that claimant's work as a boilermaker was the likely cause of his hearing loss—evidence that NAES does not dispute—its reliance on evidence that claimant's work at SCI was unlikely to have contributed to that loss in no way deprives the board's ultimate conclusion of substantial

evidence or reason.[8] *See Wiggins v. SAIF*, 300 Or App 319, 324, 453 P3d 603 (2019) (the board's determination "is supported by substantial evidence if the record, viewed as a whole, would permit a reasonable person to make the finding" (internal quotation marks and brackets omitted)).

NAES's third substantial-evidence argument is similarly unpersuasive. NAES contends that, because the board did not expressly consider potential other, nonwork causes of claimant's hearing loss, its sole-cause determination is not supported by substantial evidence. We disagree. The issue before the board was not whether any aspect of the claim was compensable, but which of two employers was responsible for that concededly compensable claim. Thus, to the extent that NAES now suggests that part of claimant's hearing loss is noncompensable, that argument has no bearing on whether the sole cause of claimant's compensable condition was work he performed before his employment by SCI.

Finally, we reject NAES's suggestion that, under *Foster Wheeler Corp.*, 188 Or App at 584, the board's order lacks substantial reason because it was based on conflicting evidence and the board did not adequately explain its resolution of that conflict. According to NAES, the board was required to explain why, in determining that claimant's prior employment had been the sole cause of his occupational disease, it had disregarded expert testimony that allowed for the possibility that claimant's employment at SCI had contributed to his hearing loss. Again, we disagree.

The premise of NAES's argument appears to be that the medical experts in this case testified in a manner that was either internally inconsistent or inconsistent with the testimony of each other, requiring the board to explain how it chose what testimony to accept. *See, e.g.*, *SAIF v. January*, 166 Or App 620, 626, 998 P2d 1286 (2000) (board

---

[8] Among other evidence in the record, Lipman opined that "it is medically probable that his 40 years of employment as a boilermaker represents the sole cause of his hearing loss," Hodgson acknowledged that "the type of work that he performed [for NAES] would expose him to potentially injurious noise" and that the "concept of employment-related hearing loss began as 'boilermaker's ear' in the 1920s," and Wilson agreed that claimant's work as a boilermaker "certainly contributed to the patient's hearing loss and likely to a very significant degree."

erred when it neither acknowledged nor reconciled inconsistencies between two opinions offered by the same medical expert, then failed to explain why it found one opinion more persuasive than the other). Here, however, there were no inconsistencies for the board to explain.

For one thing, no expert opined that it was *not* medically probable that claimant's prior employment had been the sole cause of his hearing loss. Thus, the board's sole-cause determination did not implicitly reject any conflicting evidence or, for that reason, require further explanation. *Cf. Harrison*, 299 Or App at 114-15 (although expert's opinion appeared to rely on conflicting accounts of how the claimant's workplace injury occurred, opinion itself was not inconsistent and board was not required to provide lengthy, in-depth explanation of its reliance on opinion).

For another thing, even viewing Hodgson's and Wilson's testimony—in which they acknowledged that they could not say for certain that claimant's work for SCI had played no role in his condition—as affirmative evidence that a causal relationship was possible, that still would not create a conflict under the LIER. That is, as we have just explained, the two prongs under *Roseburg Forest Products* are independent bases on which a presumptively responsible employer can shift liability to an earlier employer. 303 Or App at 692. Thus, there is no material inconsistency between, on the one hand, testimony that it was possible that claimant's work for SCI had contributed to his hearing loss and, on the other hand, the board's ultimate determination that, to a reasonable medical probability, claimant's prior employment had been its sole cause. *See id.*; *Liberty Metal Fabricators*, 295 Or App at 814.

Contrary to NAES's suggestion, *Foster Wheeler Corp.* has no bearing on this case. There, we held that evidence that the claimant's work for the presumptively responsible employer *could* have caused his occupational disease provided support for the board's finding that the claimant's previous employment had not been its sole cause.[9] *Foster*

---

[9] We note that there appears to be an error in the *Foster Wheeler Corp.* opinion. In explaining our decision, we stated that there was evidence that "claimant's work *as an ironworker and boilermaker* for *employer* could have contributed

*Wheeler Corp.*, 188 Or App at 584. As a result, the board had not erred when it determined that the employer had failed to satisfy either of the *Roseburg Forest Products* prongs. *Id.* We did not, however, suggest that the evidence *compelled* the board's finding that the claimant's previous employment had not been the sole cause of his condition, or that that evidence was necessarily inconsistent with a finding that the claimant's prior work *had* been its sole cause. Furthermore, and of particular relevance here, we did not suggest in that case that the contrary finding would have required additional explanation.

Consequently, neither *Foster Wheeler Corp.*, nor any other authority identified by NAES, required the board to further explain its reliance on the experts' sole-cause testimony or how that evidence led to the board's ultimate legal conclusion. Therefore, the board's order did not lack substantial reason.

The board properly applied the LIER in determining that SCI had successfully shifted responsibility for claimant's compensable hearing loss to NAES because claimant's previous employment was the "sole cause" of that occupational disease. That decision was supported by substantial evidence and reason. Accordingly, we affirm.

Affirmed.

---

to that loss." 188 Or App at 584 (emphases added). From the context, however, it appears that we meant to say that the claimant's work for the employer using "jackhammers and metal bars" could have contributed to that loss, as the claimant's work as an ironworker and boilermaker had only been for previous employers. *See id.* at 581. We proceed with that understanding.